735 P.2d 1166

Claude ELDRIDGE, Plaintiff-Appellant,

v.

AZTEC WELL SERVICING COMPANY, Employer, and Employers National Insurance Company, Insurer, Defendants-Appellees.

No. 9381.

Court of Appeals of New Mexico.

March 12, 1987.

Certiorari Denied April 21, 1987.

Jay L. Faurot, P.A., Farmington, Winston Roberts-Hohl, Santa Fe, for plaintiff-appellant.

Richard L. Gerding, Tansey, Rosebrough, Roberts & Gerding, P.C., Farmington, for defendants-appellees.

## OPINION

DONNELLY, Chief Judge.

Plaintiff appeals from the trial court's refusal to award certain hospital and medical costs under the Workmen's Compensation Act, NMSA 1978, Section 52-1-49. The central issue is whether the employer provided timely medical services to the plaintiff in accordance with the Workmen's Compensation Act. Other issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Dennis F.*, 104 N.M. 619, 725 P.2d 595 (Ct.App.1986). We affirm the trial court.

Plaintiff was employed as a floorhand on a drilling rig. On August 5, 1985, he was struck in the back while working on the rig floor. He reported the incident to his driller but continued to work the remainder of his shift. The next day he returned to work, performing his duties until he picked up a water cooler to carry to the rig. He said his pain then became too intense to walk or move. Plaintiff did not report the second incident or directly complain of his injury to anyone, but testified that it was readily apparent that he "couldn't * * * move around." Plaintiff was told to lie down and rest for the remainder of his shift.

Thereafter, plaintiff did not return to work. On August 6, 1985, he consulted a chiropractor, Dr. David Brimhall, D.C. Plaintiff testified that "within a week" of the accident, he went to his employer's office to report the work injury. The report, which was introduced as a defendant's exhibit, is dated August 7, 1985, the day after plaintiff's visit to Dr. Brimhall. The accident report was prepared by the employer's safety manager, and it noted that plaintiff's visit to Dr. Brimhall had been unauthorized. The safety manager

instructed plaintiff to see Dr. Joseph H. Sharpe, a company designated doctor. The employer's insurer paid Dr. Brimhall $500 for plaintiff's first two visits, but then gave the chiropractor written notice that it would not pay for any further treatment.

Plaintiff was treated for muscle pain by Dr. Sharpe and was then examined by Dr. George H. Peacock, a general surgeon. A CT scan ordered by Dr. Peacock showed no abnormalities, and Dr. Peacock diagnosed plaintiff's injury as a mechanical back strain. Dr. Peacock testified at trial that plaintiff's complaint of "almost total incapacitation" was inconsistent with muscle strain. Therefore, Dr. Peacock referred plaintiff to a neurologist, Dr. Pierre Herding, in order to confirm that there was no neurologic damage. The employer's insurance adjuster arranged an appointment with Dr. Herding, but plaintiff failed to keep the appointment, explaining at trial that he had run out of gas on his way to the examination. Plaintiff admitted, however, that he never attempted to reschedule the appointment. Despite the insurer's notification to both plaintiff and Dr. Brimhall that it would not pay for further treatment, plaintiff continued to see Dr. Brimhall. Dr. Brimhall referred plaintiff to Dr. Barry Hillmer, a physician in Durango, Colorado. Dr. Hillmer ordered plaintiff hospitalized for both a CT scan and a mylogram test, as well as physical therapy. The cost of this unauthorized medical treatment was $6,519.14.

The trial court denied plaintiff recovery for these additional medical costs, and found that the employer and its insurer "at all times material to this cause of action, furnished or arranged to furnish adequate medical treatment for Plaintiff." The court further found that plaintiff refused to continue medical treatment with the physicians furnished or recommended by the employers, and instead "chose to receive treatment from physicians and medical practitioners of his own choice after being told that medical services and treatment would be provided and that Defendant[s] would not pay for the treatment selected by Plaintiff."

## RECORD ON APPEAL

We address initially the threshold problem of an incomplete record on appeal. Plaintiff's brief advises the court that one of the two tapes of the trial proceedings was destroyed accidentally by the clerk of the district court. Plaintiff further asserts that the parties were unable to agree upon a reconstructed record. Defendants, however, dispute the latter contention, claiming that "[a]t no time has attorney for Plaintiff attempted to reconstruct the record as inferred * * *."

■ Although the record is incomplete, both parties have briefed the case on its merits. Neither party contends that the lack of a complete record prevents a meaningful review of the issue on appeal. *See State v. Wildenstein,* 91 N.M. 550, 577 P.2d 448 (Ct.App.1978); *see also State v. Fish,* 101 N.M. 329, 681 P.2d 1106 (1984). The above recitation of facts is based on the tape transmitted to this court, and we believe that it provides a record of sufficient completeness to permit us to properly consider and resolve the issue. *State v. Herrera,* 84 N.M. 46, 499 P.2d 364 (Ct.App. 1972). It bears repeating, however, that it is the appellant's responsibility to provide this court with the record on appeal, and when a record is incomplete, this court assumes that the missing portions would support the trial court's determination. *State v. Padilla,* 95 N.M. 86, 619 P.2d 190 (Ct.App.1980).

## EMPLOYER'S OBLIGATION TO FURNISH MEDICAL CARE

■ In New Mexico, an injured workman is precluded from seeking independent medical treatment at the employer's expense when the employer has indicated a willingness to furnish treatment and actively make such services available. *See* § 52-1-49; *Gregory v. Eastern New Mexico University,* 81 N.M. 236, 465 P.2d 515 (Ct.App.1970); *see also Montoya v. Anaconda Mining Co.,* 97 N.M. 1, 635 P.2d 1323 (Ct.App.1981). The "medical services rule," set forth in Section 52-1-49, is described by Larson in his treatise, 2 A. Lar-

son, *Workmen's Compensation Law,* Section 61.12(d) (1986), as follows:

If the employer has sufficient knowledge of the injury to be aware that medical treatment is necessary, he has the affirmative and continuing duty to supply medical treatment that is prompt, in compliance with the statutory prescription on choice of doctors, and adequate; if the employer fails to do so, the claimant may make suitable independent arrangements at the employer's expense.

The dispute in this case centers on whether the employer acted with sufficient promptness to preserve its right of medical control. Plaintiff claims that Section 52–1–49 requires an employer to furnish medical treatment "as soon as the worker is injured." Plaintiff relies on the express wording of the statute, which provides in pertinent part:

A. *After injury,* and continuing as long as medical or surgical attention is reasonably necessary, the employer shall furnish all reasonable surgical, physical rehabilitation services, medical, osteopathic, chiropractic, dental, optometry and hospital services and medicine unless the workman refuses to allow them to be so furnished.

B. In case the employer has made provision for, and has at the service of the workman *at the time of the accident,* adequate * * * medical facilities and attention and offers to furnish these services during the period necessary, then the employer shall be under no obligation to furnish additional * * * medical ... services or medicine than those so provided * * *. [Emphasis added.]

■ We disagree with plaintiff's contention that the emphasized wording of the statute, above, prevails over the remaining language in the statute and imposes an arbitrary duty on the employer to act in every instance "at the time of the accident." Instead, we construe the statute in its entirety and conclude that the legislative intent is that an employer is required, under Section 52–1–49, to provide appropriate "reasonable" and "adequate" medical treatment in a timely manner. *Beckwith v.*

*Cactus Drilling Corp.,* 84 N.M. 565, 505 P.2d 1241 (Ct.App.1972). *Cf. State v. Slicker,* 79 N.M. 677, 682, 448 P.2d 478, 483 (Ct.App.1968) ("immediately" means "with reasonable promptness and dispatch").

■ Our case law reflects that work injuries span a broad spectrum, ranging from sudden fatal accidents to gradual, progressive injuries, not immediately discoverable. *See, e.g., Webb v. New Mexico Publishing Co.,* 47 N.M. 279, 141 P.2d 333 (1943). Clearly, the question of whether an employer knew or should have known that a worker required medical treatment, and whether the treatment provided by the employer was adequate, depends on the nature of the injury sustained and the circumstances of both the accident and the employer's knowledge of the accident. *See Beckwith v. Cactus Drilling Corp.*

■ Under Section 52–1–49, an employee injured in a compensable job-related accident may not ordinarily incur medical expenses and assign liability for such costs to an employer, without first giving the employer a reasonable opportunity to furnish the services. *See also Valdez v. McKee,* 76 N.M. 340, 414 P.2d 852 (1966); *Montoya v. Anaconda Mining Co.*

■ We hold there is substantial evidence to support the trial court's findings. Here, the evidence does not reflect a failure by the employer to provide emergency medical treatment to plaintiff. *Compare Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App.1977). After being hit in the back, plaintiff continued to work the double shift and returned the next day to work another double shift. When he then strained his back lifting an ice cooler, he was told to lie down and rest, which he did. During this initial period plaintiff did not request or independently seek emergency medical treatment. Thus, the evidence suggests that neither plaintiff nor his driller perceived the extent of the injury, and neither considered the injury to be emergency in nature. *See Ingalls Shipbuilding Corp. v. Byrd,* 215 Miss. 234, 60 So.2d 645 (1952) (if worker failed to appreciate the seriousness of his injury, the employer cannot be expected to have done so).

Plaintiff did not consult Dr. Brimwall until August 6, 1985, and did not report the accident to his employer until the following day. The record contains no explanation for the delay in reporting the accident to the employer. However, it is undisputed that the employer's safety manager, when apprised of the incident, immediately referred plaintiff to a company doctor. It is further undisputed that the insurer thereafter gave notice to both plaintiff and Dr. Brimwall that it would not pay for further treatment by a chiropractor or physician other than the physicians furnished by defendants. Notwithstanding this admonition, plaintiff continued to see Dr. Brimwall, and Dr. Brimwall referred plaintiff for additional costly treatment in Durango.

Contrary to plaintiff's argument, this is not a case in which the employer belatedly attempted to assert its statutory right, or where the proffered services were inadequate. *See Montoya v. Anaconda Mining Co.* (exceptions to the rule include instances in which the worker is justified in initially seeking independent treatment). Instead, it is inferrable from the evidence that the employer made arrangements for medical treatment as soon as it became apparent that treatment was necessary. The trial court rejected the contention that plaintiff was justified in initially seeking independent medical treatment.

The facts of this case also distinguish it from cases in which the employer showed only a passive willingness to provide or arrange for medical treatment. *Compare Sedillo v. Levi-Strauss Corp.*, 98 N.M. 52, 644 P.2d 1041 (Ct.App.1982); *Trujillo v. Beaty Electric Co.*, 91 N.M. 533, 577 P.2d 431 (Ct.App.1978). Here, the employer referred plaintiff to two doctors, and then, on the recommendation of one of those doctors, made arrangements for plaintiff to see a neurological specialist, whom plaintiff chose not to see. On appeal we view the evidence and its logical inferences in the light most favorable to the verdict. *Albuquerque National Bank v. Albuquerque Ranch Estates, Inc.*, 99 N.M. 95, 654 P.2d 548 (1982); *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App. 1985). The trial court's finding that the employer fulfilled its statutory duty to provide adequate and reasonable medical care under the circumstances is supported by substantial evidence.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.