781 P.2d 1178

**Trinity BOWLES, Claimant–Appellant,**

v.

**LOS LUNAS SCHOOLS, and New Mexico Public School Insurance Authority, Respondents–Appellees.**

**No. 10813.**

Court of Appeals of New Mexico.

Sept. 26, 1989.

Certiorari Denied Oct. 27, 1989.

Lorenzo A. Chavez, Martin J. Chavez, Chavez Law Offices, Albuquerque, for claimant-appellant.

Carlos G. Martinez, Butt, Thornton and Baehr, P.C., Albuquerque, for respondents-appellees.

## OPINION

MINZNER, Judge.

Claimant raises three issues on appeal from a compensation order of the Workers'

Compensation Division. The date of the accident was January 23, 1987. Therefore, these issues arise in part under prior law. *See* NMSA 1978, §§ 52-1-1 to 52-1-69 (Orig.Pamp. & Cum.Supp.1986) (the Interim Act); *see also* NMSA 1978, § 52-4-1 (Repl. Pamp.1987). First, she contends the hearing officer erred in determining her to be partially rather than totally disabled. Second, she contends the hearing officer erred in failing to find a safety device violation. Third, she contends the hearing officer erred in not ordering employer to pay the bills of Dr. Sanchez, a family practitioner; Dr. Hinkeldey, a chiropractor; and Dr. De-Blassie, a psychologist. We affirm.

BACKGROUND.

On January 23, 1987, claimant was working as a school teacher for the Los Lunas public schools in a portable classroom building. The entrance to the classroom is two to three feet off the ground. There is a platform in front of the doorway, with some stairs and a ramp leading from the ground to the platform. The platform had a handrail; the stairs did not, although both the platform and the stairs at other portable classrooms had handrails. Claimant was pushed and fell off the platform to the ground. As a result of the fall, she broke one of the bones in her right foot, sustained a concussion, and strained her neck and back.

Shortly after the injury, claimant was seen by Dr. Ramaswamy, who operated on her right foot. In late April or early May 1987, claimant's care was transferred from Dr. Ramaswamy to Dr. Boyd, who provided follow-up care for the injury to her foot and also prescribed treatment, primarily physical therapy and medication, for claimant's complaints concerning her neck and cervical spine. In August 1987, Dr. Boyd became concerned that some of claimant's difficulties were a result of a psychological condition and recommended claimant be seen by a psychologist. Claimant saw Dr. Yeo, a neuropsychologist, who evaluated claimant to determine whether some of her difficulties were caused by the residual effects of the head injury. Employer paid the bills of these three doctors.

At the hearing before the hearing officer, both parties requested a finding that claimant had reached maximum medical improvement on August 1, 1987. Thus, the primary dispute between the parties was whether and to what extent claimant was disabled on and after that date. Claimant argued that she had suffered a psychological impairment as a result of a physical impairment and that in combination these injuries rendered her totally and permanently unable to earn a comparable wage. *See* § 52-1-25. The hearing officer found that claimant had suffered a permanent physical impairment, that she had reached maximum medical improvement, and that her psychological condition did not increase her disability.

At the hearing, claimant also argued that the employer should be required to pay the medical bills of Drs. Sanchez, Hinkeldey, and DeBlassie. Dr. DeBlassie is a psychologist who testified for claimant at the hearing. He performed the same type of evaluation as Dr. Yeo and came to similar, although not identical, conclusions. Dr. Hinkeldey is a chiropractor. Claimant sought treatment from him while she was still under the care of Dr. Boyd. Employer's insurance carrier notified both claimant and Dr. Hinkeldey that it would not authorize treatment by Dr. Hinkeldey. Dr. Hinkeldey never actually treated claimant; instead, he recommended a course of treatment that was never started. In August 1987, while still under the care of Dr. Boyd, claimant saw Dr. Sanchez, a family practitioner, for the problems with her neck and cervical spine. Dr. Sanchez prescribed muscle relaxants and referred claimant to a specialist.

The hearing officer found that the employer provided adequate medical services and that the services provided by the other doctors were not reasonable. He also rejected a requested finding that Dr. Boyd's services were unsatisfactory.

EXTENT OF DISABILITY.

■ Under Sections 52-1-24 and 52-1-25 of the Interim Act, disability is defined in terms of "permanent physical impairment." Under Section 52-1-24, compensation for

"permanent total disability" requires evidence of a permanent physical impairment, as a result of which the worker is wholly unable to earn comparable wages or salary. Under Section 52–1–25, compensation for partial disability requires evidence of a permanent physical impairment, as a result of which the worker has an anatomic or functional abnormality existing after the date of maximum medical improvement. By express statutory provision, an anatomic or functional abnormality must be based on "a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment." § 52–1–25.

The threshold question under either section is whether the worker suffered a "permanent physical impairment." Here, the hearing officer found that claimant suffered a 25% permanent partial disability. That finding has not been challenged. He also found that there has been "no increase in the impairment rating or partial disability rating as a result of the Claimant's treatable psychological condition."

The last sentence of Section 52–1–24 provides that " '[p]hysical impairment' does not include impairment of function due solely to psychological or emotional conditions, including mental stress." On appeal claimant makes a persuasive argument that the last sentence of Section 52–1–24 does not exclude physical impairment based on psychological injury that arises out of a physical injury. We assume, but need not decide, that she is correct. In this case, however, the hearing officer's finding can be read to mean that the psychological injury at issue was not permanent.

Findings of fact are to be liberally construed in support of the judgment. *H.T. Coker Constr. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App. 1974). The findings are sufficient if a fair construction of all of them, taken together, supports the trial court's judgment. *Id.* Construed liberally, the findings support a conclusion that the hearing officer found the psychological condition was temporary rather than permanent. If there is substantial evidence to support the finding that claimant's condition was not permanent, Section 52–1–24 is not applicable.

Dr. Yeo gave claimant a battery of psychological tests. Based on those tests, Dr. Yeo described her as having difficulties in some areas of cognitive function, particularly in the areas of attention and concentration, speed of responses, and the organization of problem-solving efforts. He characterized these as "mild but definite." In addition, based on the tests, Dr. Yeo believed claimant had a tendency to somatic complaints under stress.

In Dr. Yeo's opinion, it was more probable than not that claimant's cognitive difficulties were not the result of the concussion but, rather, were secondary to the stress. While Dr. Yeo could not rule out brain damage entirely, it was more probable than not that there was no organic brain damage. Claimant's difficulties met the diagnostic criteria for post-traumatic stress disorder, which is usually temporary. She needs psychotherapy. The problems claimant was experiencing were precipitated by the accident and they would be impediments to her efficient functioning as a school teacher.

Dr. DeBlassie's testimony was similar. Dr. DeBlassie also gave claimant psychological tests. Dr. DeBlassie was of the opinion that at that point she had no organic brain damage. She has extreme reactions to physical difficulties and a tendency to hypochondria. Dr. DeBlassie diagnosed her as suffering from an adjustment disorder with depressed moods. This was probably a temporary situation, although it could be exacerbated by the lack of treatment. She needed psychological treatment and her psychological condition was sufficiently disabling that she could not return to work as a school teacher. In Dr. DeBlassie's opinion, to a reasonable medical probability, claimant's psychological problems were caused by the accident and injury.

The hearing officer found that "[t]he psychological condition of the Claimant arising out of the injury sustained has not resulted in total permanent disability because Claimant can return and has been

asked to return to work by the employer." Claimant challenges the portion of the finding concerning her ability to return to work as not based upon substantial evidence because both psychologists, Dr. Yeo and Dr. DeBlassie, testified she was suffering from a psychological condition that totally prevented her from working.

However, under the circumstances of this case, we do not need to reach this issue. The issue of whether or not claimant is able to earn comparable wages would arise only if the hearing officer had found she suffered from a permanent physical impairment. *See* § 52-1-24(A). The hearing officer in this case found a partial disability. The definition of partial disability does not turn on whether or not claimant is able to earn comparable wages; rather, it is concerned solely with whether she suffers from a permanent physical impairment within the meaning of the statute. *See* § 52-1-25.

In this case, the hearing officer decided the physical disability was permanent but partial and the psychological condition was temporary. On appeal, the question is whether the findings are supported by substantial evidence, not whether the evidence would support a different result. *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 715 P.2d 462 (Ct.App.1986). The testimony of the two psychologists is substantial evidence to support the findings.

SAFETY DEVICE VIOLATION.

■ Claimant argues that there was evidence below that the handrails on the stairs were in general use in the industry, specifically photographs that showed other portable classrooms at the same school equipped with handrails on the stairs as well as the platform. Claimant admits this is the only evidence that handrails were in general usage.

In *Romero v. H.A. Lott, Inc.*, 70 N.M. 40, 369 P.2d 777 (1962), the supreme court discussed the term "general usage." It held that the question of custom or usage is a matter of fact, not opinion, and can be established by testimony of specific uses or by evidence of general practice of contractors. *Id.* at 43, 369 P.2d at 780. It defined the term as prevalent, usual, widespread, or extensive, though not universal. *Id.* at 45, 369 P.2d at 781. In *Romero* the requirement of general usage of railings around scaffolds was established by the testimony of a witness from the carpenter's union whose job involved overseeing safety at job sites. The witness testified he had commonly seen railings around scaffoldings during his six years of visiting construction sites.

*Romero* relied on *Jones v. International Minerals & Chem. Corp.*, 53 N.M. 127, 202 P.2d 1080 (1949), for the proposition that general usage could be established by testimony of specific uses. However, in *Jones*, the supreme court held that when there are three potash mines in a county, testimony that the device is used in one does not constitute proof of general usage in the industry. Claimant does not point to testimony in this case concerning other schools in the school district. Under *Jones*, the fact that handrails were in use in her school does not establish that they were in general usage. Thus, we conclude the hearing officer did not err in failing to increase the compensation award under NMSA 1978, Section 52-1-10(B) (Repl. Pamp.1987).

Claimant's second argument appears to be an attack on the finding that the presence of handrails would not have prevented the injuries. It is not necessary to reach this argument, because claimant has not shown that handrails were in general usage.

PAYMENT OF MEDICAL BILLS.

Claimant's argument on appeal concerns employer's obligation to provide medical services. The argument has both a statutory construction and a factual aspect. The relevant statutes are Sections 52-1-49 and 52-4-1. Section 52-1-49 provides in pertinent part:

A. After injury, and continuing as long as medical or surgical attention is reasonably necessary, the employer shall furnish all *reasonable* surgical, physical rehabilitation services, medical, osteopathic, chiropractic, dental, optometry and hospital services and medicine unless

the workman refuses to allow them to be so furnished.

B. In case the employer has made provisions for, and has at the service of the workman at the time of the accident, *adequate* surgical, hospital and medical facilities and attention and offers to furnish these services during the period necessary, then the employer shall be under no obligation to furnish additional surgical, medical or hospital services or medicine than those so provided; provided, however, that the employer furnishing such surgical, medical and hospital services and medicines shall be liable to the workman for injuries resulting from neglect, lack of skill or care on the part of any person, partnership, corporation or association employed by the employer to care for the workman. In the event, however, that any employer becomes so liable to the workman, it shall be optional with the workman injured in such a manner to accept the foregoing provisions and retain the right to sue the person, partnership, corporation or association employed by the employer who injures the workman through neglect, lack of skill or care. [Emphasis added.]

Section 52–4–1 provides in pertinent part:

C. Whenever any health services contract issued, delivered, issued for delivery, entered into, amended or renewed after the effective date of this section provides for payment, reimbursement or indemnification for any service which is within the lawful scope of practice of a health care provider in this state, such payment, reimbursement or indemnification shall not be denied when such service is rendered by the health care provider, *provided such treatment is related to the injury and is reasonable and necessary.* Nothing contained in the Workmen's Compensation Act ... or the New Mexico Occupational Disease Disablement Law shall be construed to deny or limit the right of a workman, if he has availed himself of such services as are provided pursuant to those acts and such services have *proven unsatisfactory,* to seek the services of a health care provider; provided that the employer's pay-

ment, pursuant to this section, shall not constitute furnishing such services for purposes of Section 52–1–49 NMSA 1978. [Emphasis added; citation omitted.]

Claimant acknowledges that Section 52–1–49 requires employer to provide certain medical services and excuses the employer from any obligation to provide other medical services if the required services are provided. However, she argues that Section 52–1–49 has been modified by Section 52–4–1(C), *see Salcido v. Transamerica Ins. Group,* 102 N.M. 217, 693 P.2d 583 (1985), and that under that section an injured worker may change doctors or seek alternative treatment without demonstrating that the services being provided are unreasonable or inadequate. She asks us to construe the term "proven unsatisfactory" as defining a standard different from the standard of "unreasonable" or "inadequate." Factually, claimant contends that the hearing officer erred in rejecting her requested finding that the services provided by one of employer's doctors were unsatisfactory.

The hearing officer adopted three relevant findings: "[t]he employer did provide medical care"; "[t]he provision of medical services by employer was adequate"; and "[t]he Claimant has sought the care of Dr. Hinkelday [sic], Dr. Deblassie [sic] and Dr. Rolland Sanchez. [This care] was not reasonable as the employer has provided adequate medical services by Drs. Ramasuamy [sic], Yeo and Boyd." Additionally, claimant submitted requested findings of fact to the effect that the doctor bills of the three doctors should be paid. These two findings were rejected. The trial court's refusal to adopt a requested finding of fact is regarded as a finding against the party having a burden of proof on that issue. *Gallegos v. Wilkerson,* 79 N.M. 549, 445 P.2d 970 (1968).

It is the duty of the reviewing court to liberally construe doubtful findings to support the judgment. *Universal C.I.T. Corp. v. Foundation Reserve Ins. Co.,* 79 N.M. 785, 450 P.2d 194 (1969). Liberally construed, we view the hearing officer's findings as determining that the services pro-

vided by the employer were not "proven unsatisfactory" for purposes of Section 52–4–1(C).

The hearing officer apparently determined that if the services provided by the employer were adequate for purposes of Section 52–1–49(B), then they were not unsatisfactory for purposes of Section 52–4–1(C). Thus, this appeal raises two issues: (1) whether the hearing officer construed Section 52–4–1(C) correctly, and (2) whether there was sufficient evidence to support a finding that the medical services employer provided were adequate. We address the statutory construction issue first.

**A. The Employer's Obligation to Provide Medical Services Under Sections 52–1–49 and 52–4–1(C).**

The general medical services rule in workers' compensation cases is described by Prof. Larson as follows:

> If the employer has sufficient knowledge of the injury to be aware that medical treatment is necessary, he has the affirmative and continuing duty to supply medical treatment that is prompt, in compliance with the statutory prescription on choice of doctors, and adequate; if the employer fails to do so, the claimant may make suitable in dependent [sic] arrangements at the employer's expense.

2 A. Larson, *Workmen's Compensation Law* § 61.12(d) (1989) (footnotes omitted). New Mexico follows the general rule.

[3] In New Mexico an injured worker is precluded from seeking independent medical treatment at the employer's expense when the employer has indicated a willingness to furnish treatment and actively makes such services available. *Eldridge v. Aztec Well Servicing Co.,* 105 N.M. 660, 735 P.2d 1166 (Ct.App.1987). Section 52–1–49 sets forth our "medical services rule." *Id.* Section 52–1–49(A) imposes an affirmative obligation to pay for reasonable medical services. Section 52–1–49(B) provides that, if adequate services are provided, the employer is under no obligation to provide

additional services. Section 52–1–49(B) also provides that an injured employee has the option to hold his or her employer liable for the negligence of doctors and other medical personnel who treated work-related injuries or to hold doctors and other medical personnel directly liable. *See Security Ins. Co. v. Chapman,* 88 N.M. 292, 540 P.2d 222 (1975).

▪ We note that Section 52–1–49(A) requires the employer to pay for "reasonable" medical services, while Section 52–1–49(B) indicates the employer is obligated to pay for "adequate" medical services. Taken in context, the words "reasonable" and "adequate" appear to describe the same standard. *See generally Travelers Ins. Co. v. Hernandez,* 276 F.2d 267 (5th Cir. 1960) (in an action under the Texas Workmen's Compensation Act, the court appears to equate the term "reasonable" with the term "adequate").

▪ We conclude that our medical services rule requires the employer to provide a certain standard of care and excuses the employer from any obligation to provide other services only if that standard is met. We construe the terms "reasonable" and "adequate" as describing care that is both appropriate to the injury and sufficient to bring the worker to maximum recovery. We now turn to the question of whether and how Section 52–4–1 modifies our medical services rule.

The title to 1983 N.M. Laws, Chapter 116 (§ 52–4–1) provides an insight to the legislative intent and purpose in adopting this statute, indicating that it was intended to extend the definition of "health care provider" within the context of a workers' compensation or occupational disease disablement insurance policy or health services contract and also to clarify a worker's right to choose health care providers.[1] Other portions of Section 52–4–1 address the definition of "health care provider" and "health services contract." Thus, we believe that Section 52–4–1(C) is our legisla-

---

1. The title reads: "Relating to Workmen; enacting a section of the NMSA 1978; providing for the right to choose health care providers; providing applicability to workmen's compensation and occupational disease disablement insurance; declaring an emergency."

ture's first attempt to address the question of a worker's right to choose his or her own doctor. While the legislature's intent is somewhat ambiguous, we believe it attempts to reconcile competing interests. In light of this court's cases applying our medical services rule, the supreme court's decision in *Salcido,* and the language used in Section 52–4–1(C), we conclude that Section 52–4–1(C) supplements, rather than modifies, Section 52–1–49.

The problems inherent in cases involving the furnishing of medical services result from the need to balance competing interests. *See* 2 A. Larson, *supra,* at § 61.12(b). One interest is that of the employer, who is responsible for payment. It has been suggested that the employer's continuous control over the nature and quality of medical services from the moment of injury tends to secure the maximum level of rehabilitation. *Id.* The other interest is that of the injured employee, who is the subject of the treatment provided. Understandably he or she ordinarily would prefer to choose a doctor as well as a hospital. *Id.*

In some states, the employer is required to give the employee a choice of doctors. *See, e.g., Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654 (Tenn.1986). In others, if the injured employee becomes dissatisfied with the authorized physician, the employer must select another physician to treat the injured employee unless relieved of the obligation by a court order that determines a change in medical attendance is not in the employee's best interests. *See Hill v. Beverly Enters.,* 489 So.2d 118 (Fla.Dist.Ct. App.1986).

Until recently, New Mexico had no particular statutory provision authorizing a choice of doctors. However, as a matter of case law, we had interpreted our "medical services rule" as recognizing some exceptions. *See generally Montoya v. Anaconda Mining Co.,* 97 N.M. 1, 635 P.2d 1323 (Ct.App.1981). For example, we had recognized that an employee has a right to seek independent medical treatment at the employer's expense where the employer, although passively expressing a willingness to furnish medical treatment, fails to do so in fact. *Id.* at 5–6, 635 P.2d at 1327–28. In *Montoya,* we also acknowledged the existence of other exceptions. *Id.* at 6, 635 P.2d at 1328. One of those exceptions is where the medical services provided by the employer are not adequate. *See Travelers Ins. Co. v. Hernandez.*

In *Salcido,* the supreme court indicated that under Section 52–4–1(C) an employer must pay bills incurred by an injured worker for additional medical treatment from a recognized health care provider, provided such services are deemed reasonable and necessary, whether or not the worker has requested additional services from the employer. Based in part on this holding, the court reversed the district court's decision granting the employer's insurance company summary judgment and remanded the case for trial.

Under the first sentence of Section 52–4–1(C), if the workman avails himself of the services provided under a health services contract,[2] if those services are related to the injury, and if they are reasonable and necessary, then the employer is responsible for the bills. Under the second sentence, if the employer provides services that "prove unsatisfactory," then the employer is obligated to pay the reasonable and necessary cost of any other services procured by the worker that are related to the injury. However, under the last portion of the second sentence, the employer's obligation to pay for services procured by the worker does not make him liable, at the worker's option, for negligence in the performance of those services.

Claimant misconstrues *Salcido.* The argument made by the worker in *Salcido* seems to have been that the employer's passive willingness to furnish medical services was not sufficient to satisfy its statutory obligation to provide them, *see Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560

---

**2.** Section 52–4–1(B) provides that a "health services contract" means a workers' compensation or occupational disease disablement insurance policy or contract that provides for "payment, reimbursement, or indemnification for treatment or care."

P.2d 545 (Ct.App.1977), and that the employer in fact had offered no more than passive willingness. The court held that the employer may be responsible for bills the worker incurs, provided treatment is related to the injury and is reasonable and necessary. Under *Salcido* this inquiry presents questions of fact.

We do not understand *Salcido* to have reached the issue of what the term "proven unsatisfactory" means. Thus, in *Salcido* the supreme court was not required to consider the statutory construction argument raised in this case.

The language adopted by the legislature in the second sentence of Section 52–4–1(C) does not provide an injured employee the right to select his or her own doctor in the first instance or a right to insist on a different doctor than the one provided by the employer unless the services of that doctor prove "unsatisfactory." *Cf. Buchanan v. Mission Ins. Co.; Hill v. Beverly Enters.* Rather, it seems to codify an exception acknowledged by this court in *Montoya:* that an employee may seek independent medical treatment at the employer's expense, if the medical services provided by the employer are not adequate. So construed, Section 52–4–1 is not inconsistent with Section 52–1–49.

 It does not follow from a reading of both statutes that the legislature intended to make a distinction between reasonable, adequate, and satisfactory medical services. Rather, all three words appear to describe a single standard to which the employer is held. Thus, we conclude that the hearing officer did not err in construing the statute. In the event of the employer's failure to provide services in accordance with the statutory standard, the worker may seek the services of another health provider and require the employer to pay for such services, provided such treatment is related to the injury and is reasonable and necessary. The question of whether the employer has provided services in accordance with that standard is ordinarily a question of fact and depends on the circumstances of the particular case. In *Foremost Dairies, Inc. v. Industrial Accident Commission*, 237 Cal.App.2d 560, 47 Cal. Rptr. 173 (1965), the court noted that one of the tests adopted to ascertain whether an employee is entitled to reimbursement of medical treatment obtained from sources not furnished by the employer is that "the treatment received from [claimant's] own physician was a success, and that it was reasonably and seasonably necessary." *Id.* at 575, 47 Cal.Rptr. at 184 (*quoting Pacific Indem. Co. v. Industrial Accident Comm'n*, 220 Cal.App.2d 327, 333, 33 Cal. Rptr. 649, 653 (1963)). In order for the claimant to recover for the services she obtained from sources not furnished by the employer, she was required to prove (1) the services provided by the employer did not produce a positive result due to the care provided; (2) she obtained surgical, hospital, or medical facilities and attention which were successful; (3) the treatment was related to claimant's work-related injury; and (4) the treatment was reasonable and necessary. *See Lea County Good Samaritan Village v. Wojcik*, 108 N.M. 76, 766 P.2d 920 (Ct.App.1988). Thus, we now address the sufficiency of the evidence in this case.

**B. Sufficiency of the Evidence.**

 The hearing officer specifically found that employer provided medical care and that the provision of medical services by employer was adequate. Claimant did not request a finding that all of the medical services provided by employer were inadequate. However, she·did request a finding that Dr. Boyd's treatment was unsatisfactory. We review the evidence in support of that determination. *See generally DesGeorges v. Grainger*, 76 N.M. 52, 412 P.2d 6 (1966) (party who does not request findings is not entitled to a review of the evidence to support the findings).

In order for claimant to recover for the services she obtained from Dr. DeBlassie, Dr. Hinkeldey, or Dr. Sanchez, she was required to prove (1) the services provided by Dr. Boyd did not produce a positive result due to the care provided; (2) the treatment she obtained from one or more of the other doctors was successful; (3) the treatment was related to her work-related

injury; and (4) the treatment was reasonable and necessary. *See Foremost Dairies, Inc. v. Industrial Accident Comm'n.* In this case, there is no evidence to support a finding that the services Dr. Boyd provided failed to produce a positive result because of any error or omission on his part. Further, there is no evidence to support a finding that claimant's condition improved under the care of any of the other doctors. As a result, claimant failed to carry her burden of proof as to the first two elements required for the recovery she sought. *Cf. Beckwith v. Cactus Drilling Corp.*, 84 N.M. 565, 505 P.2d 1241 (Ct.App. 1972) (worker's testimony that he was dissatisfied is not sufficient to support a finding that services were unreasonable and inadequate, where the worker got no better under the care of the second doctor). Thus, the hearing officer did not err in rejecting the proposed finding.

CONCLUSION.

Employer's request for oral argument is denied. *See* SCRA 1986, 12–214(A). The decision of the hearing officer is affirmed.

IT IS SO ORDERED.

BIVINS, C.J., and DONNELLY, J., concur.