PIRELLI–ARMSTRONG TIRE COMPANY and Travelers Insurance Company, Appellants,

v.

Vern **REYNOLDS**, Appellee.

No. 96–471.

Supreme Court of Iowa.

April 23, 1997.

Steven M. Nadel of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellants.

Robert W. Pratt and Max Schott, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

This is an appeal by Pirelli–Armstrong Tire Company and its insurer (collectively Pirelli) from a district court judgment affirming an industrial commissioner's order approving a worker's application for alternative medical care under Iowa Code section 85.27 (1993). We affirm.

Vern Reynolds, a Pirelli employee, suffered a work-related knee injury in November 1993. Because of persistent symptoms stemming from the injury, Reynolds requested medical attention. Pirelli referred him to Dr. Breedlove, Pirelli's authorized physician, in February 1994. Dr. Breedlove recommended a peroneal nerve decompression, a procedure, which, the doctor explained, involves certain risks. Reynolds originally agreed to the surgery, but he later decided against it because of the risks.

Reynolds requested a second opinion, and Pirelli referred him to a Dr. Kirkland, who saw him for the first time in May 1994. Dr. Kirkland recommended foregoing surgery in favor of anti-inflammatories and a quadriceps-strengthening program. In June and July of 1994, Reynolds returned to Dr. Kirkland, complaining of continued pain. Dr. Kirkland again recommended against surgery and reaffirmed his original recommendation of the more conservative treatment.

During the following year, Reynolds' condition worsened. The original company doctor, Dr. Breedlove, examined him again in April of 1995. He noted that Reynolds suffered "fairly significant pain" and diagnosed Reynolds' condition as a "mild peroneal nerve compression syndrome, right knee." Dr. Breedlove again suggested that Reynolds have surgery. Reynolds again declined.

In May 1995, a year after he was first seen by Dr. Kirkland, Reynolds' pain was more intense, and he returned to Dr. Kirkland for another examination. Dr. Kirkland stated in his report:

I told Vern again today that he should be treated conservatively. This would be with anti-inflammatories and strengthening exercises. Again, he does have ¼ inch atrophy on the right compared to the left.

However, Vern did not seem happy with what I told him. I told him that this is how I would approach his knee; and, in my opinion, I feel there is nothing else to be done. However, I told him that if he is unhappy with what I told him, he is free to get a second opinion; and I would welcome it. He does not complain of any real swelling, locking, or giving away.

I told him that it would be best to take the anti-inflammatories such as he is and continue with his exercise program. If he wants, I would be glad to see him back here in three to four weeks for evaluation.

Reynolds decided to see a third doctor, Dr. Riggins, who recommended "diagnostic arthroscopy with arthroplasty of the right patella." In layman's terms, as Reynolds put it, he would have his knee "scoped" and a "rough edge buffed down."

Reynolds was amenable to Dr. Riggins' recommendation, and he requested that Pirelli approve this procedure, which would be done by a Dr. Kimmelman. Pirelli refused. Reynolds filed an application for alternative medical care under Iowa Code section 85.27, and that is the basis of this appeal. Section 85.27 provides in part:

For purposes of this section, the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care. The treatment must be offered promptly and be *reasonably suited to treat the injury without undue inconvenience to the employee.* If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee may agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.

(Emphasis added.)

After a hearing on the application, a deputy industrial commissioner authorized the alternative medical care, stating:

Dr. Kirkland has no further care to offer the claimant.... Offering no care to claimant is the same as offering ... no care reasonably suited to treat the injury.... I think there's two theories that the claimant can recover alternative medical care here. First, that by offering no care ... Dr. Kirkland says there is nothing else to be done; the claimant is not receiving any care to treat his knee. No care is equal to care not reasonably suited to treat the injury. The second theory that the claimant can recover under is when Dr. Kirkland says in his May 31, 1995 report he is free to get a second opinion and I would welcome it. Dr. Kirkland doesn't specify another physician the claimant can see or make any referral. It clearly opens the door for claimant to get an opinion from another physician....

This decision is based on two alternative grounds: (1) the care provided by Pirelli was not "reasonably suited to treat the injury without undue inconvenience to the employee" as required by Iowa Code section 85.27; and (2) Dr. Kirkland, in effect, referred Reynolds to another doctor by stating to Reynolds that "he is free to get a second opinion and I would welcome it." (A referral to another doctor does not require the employer's consent or the industrial commissioner's approval, according to the commissioner's interpretation of section 85.27. *See Antelman v. Holmes Oldsmobile Co.,* No. 988000, Iowa Industrial Commissioner (arb. dec.) (June 1993)).

As to the first basis for the decision, Pirelli contends that substantial evidence does not support the deputy's findings of unreasonableness and that the deputy erred in characterizing Dr. Kirkland's conservative care as "no care" at all. The second ground for the decision is erroneous, according to Pirelli, because Dr. Kirkland's generalized statement about seeing another doctor could not, as a matter of law, be considered to be a referral.

We conclude that the deputy's first-stated ground is based on substantial evidence and was not affected by an erroneous application of the law. We therefore affirm the ruling on that ground and decline to address Reynolds' argument that he was referred to another doctor.

## I. *Scope of Review.*

The Iowa Administrative Procedure Act, Iowa Code section 17A.19, governs our review of this agency action. *Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254, 257 (Iowa 1996).

Our review is for the correction of errors at law, not de novo. *Henkel Corp. v. Iowa Civil Rights Comm'n*, 471 N.W.2d 806, 809 (Iowa 1991). The commissioner—not the court—weighs the evidence, and we are obliged to broadly and liberally apply those findings to uphold rather than defeat the commissioner's decision. *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237 (Iowa 1981). On review, the question is not whether the evidence supports a finding different from the commissioner's but whether the evidence supports the findings the commissioner actually made. *Id.* at 238. In other words, the commissioner's findings are binding on appeal unless a contrary result is compelled as a matter of law. *Id.*

*Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 123 (Iowa 1995). In deciding whether substantial evidence exists, we view the record as a whole. Iowa Code § 17A.19(8)(f); *Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845, 849 (Iowa 1995).

## II. *The Law.*

Under the statute [on alternative medical care], the employer is permitted to choose the care. Iowa Code § 17A.27; *Harned v. Farmland Foods, Inc.*, 331 N.W.2d 98, 101 (Iowa 1983). By challenging the employer's choice of treatment—and seeking alternate care—[the employee] assume[s] the burden of proving that the authorized care is unreasonable. *See* Iowa R.App. P. 14(f)(5) (burden of proof rests on party seeking relief). Determining what care is reasonable under the stat-ute is a question of fact. 1916 Op. Atty. Gen. 48.

*Long,* 528 N.W.2d at 123.

In *Long* we made it clear that as a general rule the employer, not the employee, is permitted to choose the medical care to be furnished. The burden is on the employee to show that the care chosen by the employer is not reasonably suited to treat the injury. *Id.* Reasonableness, of course, is a fact question. *Id.*

In *Long* the employer's doctor referred Long to an orthopedic surgeon, Dr. Reagen. When Long's pain persisted, Dr. Reagen recommended three options: (1) do nothing and continue with work activity as tolerated, (2) seek an additional evaluation either at Mayo Clinic or the University of Iowa Hospitals, or (3) consider a pain management clinic. *Id.* The insurer initially authorized Long to be examined by a doctor from Mayo Clinic but then refused to authorize the examination when the doctor required preliminary diagnostic testing that would have cost over $5000. Instead, the insurer arranged for Long to see a doctor at University Hospitals. Long refused and filed an application under Iowa Code section 85.27 for an order by the industrial commissioner requiring the insurer to pay for the examination at Mayo.

The industrial commissioner refused to order the examination at Mayo because Long had failed to show that the treatment authorized by the insurer was not reasonably suited for his injury. The district court rejected this ruling, but on appeal, we sustained it and affirmed the commissioner's decision. We said:

Clearly Dr. Reagan's recommendation identified both the University of Iowa and the Mayo Clinic as capable of providing care reasonably suited to meet Long's needs. Long furnished no proof that Dr. Blair's evaluation at the University would be inferior or less extensive than that proposed by [the doctor] at the Mayo Clinic. Long's *desire* for treatment at Mayo, rather than the University of Iowa, is not determinative on the point. As noted by the commissioner, the employer's obligation under the statute turns on the ques-

tion of reasonable necessity, not desirability.

*Long,* 528 N.W.2d at 124.

In *Long* we noted that the referring doctor proposed either the Mayo Clinic or the University Hospitals as "reasonable treatment alternative[s] from the outset" and that the care at the University Hospitals could not be shown to be inferior or less extensive than what Mayo could provide. *Id.* This is because, at that point, no one could say which facility would be more effective because Long had not received treatment at either. *Id.*

█ *Long* must be distinguished from the present case. Here, there was substantial evidence that the care authorized by the employer was ineffective. Reynolds' pain had increased, and his leg had atrophied during the year he had been treated by the company-approved doctor. The ineffectiveness of an employer-authorized medical provider has figured prominently in courts finding that such care is not reasonably suitable. It has been observed that

> it [is] proper to allow medical expenses to an employee treated by a physician of his own choice after the physician selected by his employer has failed or refused to give necessary treatment or has been unsuccessful in his treatment, particularly where this was done with the knowledge of, and without objection by, the employer.

99 C.J.S. *Workmen's Compensation* § 273, at 933 (1958). *See generally* Jane Massey Draper, Annotation, *Workers' Compensation: Reasonableness of Employee's Refusal of Medical Services Tendered by Employer,* 72 A.L.R.4th 905 (1989) (annotating cases interpreting "reasonableness" language of statutes similar to Iowa Code section 85.27).

In *Stufflebean v. City of Fort Dodge,* 233 Iowa 438, 9 N.W.2d 281 (1943), we noted that an employee could not refuse treatment selected by the employer without losing workers' compensation benefits if that treatment "does not seriously endanger claimant's life or health *and which is shown to be reasonably certain to minimize or cure the disability for which compensation is sought ....*" 233 Iowa at 440, 9 N.W.2d at 283 (emphasis added).

In *Bowles v. Los Lunas Schools,* 109 N.M. 100, 781 P.2d 1178 (App.1989), the question was whether the worker had been justified in refusing the care proffered by the employer. The New Mexico court stated that, taken in the context of a New Mexico statute,

> the words "reasonable" and "adequate" appear to describe the same standard.
>
> We conclude that our medical services rule requires the employer to provide a certain standard of care and excuses the employer from any obligation to provide other services only if that standard is met. We construe the terms "reasonable" and "adequate" as describing care that is both appropriate to the injury and sufficient to bring the worker to maximum recovery.

*Bowles,* 781 P.2d at 1184 (citation omitted).

In *Joyce Western Corp. v. Workmen's Compensation Appeal Board,* 518 Pa. 191, 542 A.2d 990 (1988), the court stated:

> If the evidence establishes that the recommended surgery involves minimal risk to the patient and offers a high probability of success, the proposed surgery is reasonable, and specific loss benefits are properly denied upon claimant's rejection of the specified procedure.

*Joyce W. Corp.,* 542 A.2d at 996 (footnote omitted).

█ We conclude that when evidence is presented to the commissioner that the employer-authorized medical care has not been effective and that such care is "inferior or less extensive" than other available care requested by the employee, *Long,* 528 N.W.2d at 124, the commissioner is justified by section 85.27 to order the alternate care. We conclude that substantial evidence was presented to justify the commissioner's decision, and we therefore affirm.

**AFFIRMED.**