This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40986**

**TONY RICHEY,**

Petitioner-Appellee,

v.

**CHRISTINE RICHEY,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Burns Law Group, P.C.
B. Tell Ward
Farmington, NM

for Appellee

Christine Richey
Flora Vista, NM

Pro Se Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Christine Richey (Wife) appeals the district court's final order in her divorce proceeding against Tony Richey (Husband), challenging the division of the couple's property. We affirm.

### BACKGROUND

**{2}** Wife and Husband were married in 2003. Wife ran her own business, Angel Peak Bookkeeping and Tax Service, LLC (Angel Peak) out of the couple's home. Husband

worked for El Paso Oil and Gas Company for approximately twelve years before the marriage and for an additional twelve years after the couple was married, until an injury forced him to retire in 2015. The year Husband retired, the parties began transferring Husband's pension from an account with Edward Jones to an account run by Angel Peak.

**{3}**     Husband filed for divorce in 2021. During a day-long hearing, the district court heard testimony from both parties and reviewed multiple exhibits regarding the couple's assets. After reviewing the evidence, the district court issued an order dividing the couple's property. Wife appeals.

## DISCUSSION

**{4}**     Wife argues that the district court erred in its rulings on five assets. Wife contends that (1) the district court erred in determining that one-half of Husband's pension was his separate property; (2) any debt or obligations on the couple's time-share should have been allocated solely to Husband; (3) Wife is entitled to half of the amount at one point held in Husband's Wells Fargo savings account; (4) the district court erred in valuing the couple's silver dollar collection at $9,200 when Wife testified it was worth $16,000; and (5) Wife was entitled to monetary compensation equivalent to half the value of the couple's Chevy Cobalt and perishable contents of the "prepping room." We address each of these arguments in turn.

## I.     The Retirement Savings

**{5}**     Wife first challenges the district court's finding that only one-half of Husband's pension was community property. Wife argues that in transferring the funds to a joint account managed as part of Wife's business, the parties transmuted Husband's pension into a community asset. In its letter decision, the district court explained that it did not find that Husband intended to transmute his pension, and that Wife's evidence was inconsistent with her argument that the parties intended the pension to be fully community property.

**{6}**     Before turning to Wife's arguments on appeal, we begin with a brief overview of the law that bears on our analysis. "Property in New Mexico takes its status as community or separate property at the time and by the manner of its acquisition." *Allen v. Allen*, 1982-NMSC-118, ¶ 11, 98 N.M. 652, 651 P.2d 1296 (internal quotation marks and citation omitted). "[I]f the property's purchase can be traced to separate funds, then that property is owned as separate property." *Id.* Once a property's separate character has been established, the burden shifts to the party seeking to establish community property to prove by clear and convincing evidence that the funds had been transmuted into community property. *Zemke v. Zemke*, 1993-NMCA-067, ¶ 36, 116 N.M. 114, 860 P.2d 756; *see Gabriele v. Gabriele*, 2018-NMCA-042, ¶ 21, 421 P.3d 828 (holding that "the spouse who argues in favor of transmutation carries what has been variously described as a 'difficult' or 'heavy' burden" and that "[t]ransmutation must be proven by 'clear and convincing evidence of spousal intent to do so'" (quoting *Macias v. Macias*,

1998-NMCA-170, ¶ 12, 126 N.M. 303, 968 P.2d 814)); *see also Allen*, 1982-NMSC-118, ¶ 13 (stating that "[t]ransmutation is a general term used to describe arrangements between spouses to convert property from separate property to community property and vice versa"). "Proving transmutation requires evidence of intent on the part of the grantor spouse." *Gabriele*, 2018-NMCA-042, ¶ 21 (internal quotation marks and citation omitted).

**{7}** The parties appear to agree that approximately half of Husband's pension was earned during the marriage and is community property. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal."). The only issue in this appeal is whether the remaining half of the pension Husband earned before the marriage was transmuted into community property. Wife argues that she presented clear and convincing proof of transmutation based on the following facts: (1) the Angel Peak account being a joint account; (2) the parties' filling out and answering the Check Book IRA Solo 401-K application for a rollover account; and (3) the purchase and sale of a property in Arizona using funds from the Angel Peak account. As we explain, the evidence upon which Wife relies does not demonstrate that the district court erred in concluding that the portion of the pension Husband earned before the marriage remains his separate property.

**{8}** Wife first argues that the act of placing the pension into a joint account with right of survivorship is evidence of the parties' intent to transmute the pension. Husband correctly responds that placing separate property into a joint account and comingling it with community assets does not, without more, change the character of separate property into community property. *See Zemke*, 1993-NMCA-067, ¶ 26; *Burlingham v. Burlingham*, 1963-NMSC-068, ¶ 21, 72 N.M. 433, 384 P.2d 699. To conclude transmutation occurred, there must be evidence of spousal intent to transmute. *See Gabriele*, 2018-NMCA-042, ¶ 21.

**{9}** In its letter decision, the district court explained that it did not find that Husband intended to transmute his retirement earnings. The court cited the 1099-R form issued by Wife's business, Angel Peak, which showed a distribution of $350,160 to Husband alone. Wife states that "the only purpose for a [Form] 1099-R is so the Internal Revenue Service can track the flow of money and who has possession," but she has not challenged the district court's finding that this document was probative of the parties' intent or explained why the district court's conclusion that no transmutation occurred was in error in light of this evidence.

**{10}** In addition to the documentary evidence, the district court received direct evidence of the parties' intent via their testimony during the hearing. Husband testified that his motivation in moving his retirement savings to the joint account managed by Wife's business was because the money would not be subject to taxes through this type of account. Wife's testimony regarding the parties' motivation was consistent with Husband's—she stated that "we did that so we could take advantage of the laws that the IRS had for self-directed IRAs and business owners that own their own business." Neither party provided any testimony indicating that Husband had the requisite intent to

effect transmutation when he placed the pension into a joint account; rather, it appears the parties' primary intention was to obtain more favorable tax and investing status.

**{11}**    Beyond the joint tenancy designation on the account, Wife relies on an application the parties filled out when transferring Husband's pension from Edward Jones to the joint account. According to Wife, this application required each spouse to "acknowledge, approve and answer detailed and time consuming questions regarding the transference from separate to community in nature and accept responsibility that we are both named equal Trustees and will abide by Federal fiduciary guidelines when investing." Wife refers to "Def Ex 6" pages 1-3 in support of this contention, but we are unable to locate the exhibit in the record provided to this Court. Husband (the petitioner below) used numbered exhibits at trial. Husband's Exhibit 6 is a withdrawal slip from Bank of America. Wife (the respondent below) used lettered exhibits at trial. None of the exhibits appear to be a "Check Book IRA Solo 401-K Application," as Wife describes Exhibit 6. We are likewise unable to locate any testimony from either party regarding the application. Consequently, it does not appear that Wife's argument that the application provided evidence of the parties' intent to transmute was raised or preserved below, and we decline to consider it for the first time on appeal. *See Eldridge v. Aztec Well Servicing Co.*, 1987-NMCA-042, ¶ 7, 105 N.M. 660, 735 P.2d 1166 (stating that "it is the appellant's responsibility to provide this court with the record on appeal, and when a record is incomplete, this court assumes that the missing portions would support the trial court's determination"); *State v. Gonzales*, 1999-NMCA-027, ¶ 9, 126 N.M. 742, 975 P.2d 355 ("It is a bedrock principle of appellate practice that appellate courts do not decide the facts in a case. Fact-finding is the task of the trial judge or the jury. Our role is to determine whether the lower court has applied the law properly.").

**{12}**    Finally, Wife argues that the parties wired money out of the joint account to buy a house in Arizona in 2016 and deposited money back into the account when the Arizona house sold later that year. She then asserts that "[a] real estate contract is evidence of transmutation." However, like the application discussed above, the purchase contract does not appear in the record, and Wife has not explained how the Arizona property purchase provides evidence of the parties' intent to transmute Husband's pension. In fact, Wife's testimony at trial supports a contrary inference. Wife testified that while the money was in the joint account, both had access but only Husband pulled money in and out of the account. She stated that it was Husband's decision to purchase and flip the Arizona property, and that she had no input into that decision. Husband kept the profits from that venture and only returned the basis to the joint account. This testimony supports the district court's determination that Husband did not treat the funds in this joint account as community property, but as his separate property. *See Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207 ("The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding.").

**{13}**    On the whole, there is an absence of evidence in the record before us indicating that Husband had the intent to effect a transmutation of the portion of his pension

earned before marriage into community property. We affirm the district court's conclusion that one-half of the pension remains Husband's separate property.

## II. The Time-share

**{14}** Wife also challenges the district court's determination that the couple's time-share is community property. She asserts that Husband intentionally incurred debts and failed to disclose ongoing obligations on the property that she cannot pay, and therefore, it would be inequitable to divide the property equally between the two of them. Husband argues that this issue was not preserved below. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). We agree.

**{15}** During the opening statements, Wife's counsel stated to the district court that "they're both positive equity on their community estate, so there's not any significant debts that are having to be split. It's all really asset value at this point." Husband testified that he would likely sell the time-share for $20,000 at a loss "just to get it out from under me. It's paid off but it has monthly maintenance fees." Wife's counsel did not cross-examine Husband on this issue and Wife did not provide contrary testimony. Thus, the issue of possible debts was not raised or ruled on by the district court, and we decline to consider the issue for the first time on appeal.

## III. The Savings Account

**{16}** Wife also argues that she is entitled to the value of half of Husband's savings account with Wells Fargo. Wife appears to concede that this was not raised below. She states that "only until [she] went pro se did [she] understand what was happening in regards to the funding of this account."

**{17}** Even if this issue had been preserved, Wife has not challenged the district court's finding that "[t]he $68,169.00 withdrawn by [Wife] from the Wells Fargo account prior to February, 2021, and split between the parties should not be factored into the distribution." *See Seipert*, 2003-NMCA-119, ¶ 26; *Stanley v. N.M. Game Comm'n*, 2024-NMCA-006, ¶ 15, 539 P.3d 1224 (requiring a party to set forth an attack on a specific finding of the district court (citing Rule 12-318(A)(4) NMRA)). Thus, according to the unchallenged findings of the district court, Wife has already received the money from this account that she claims she is entitled to.

## IV. The Value of the Silver Dollar Collection

**{18}** Wife also challenges the district court's finding that the silver dollar collection the couple owned as community property was worth only $9,200, when she testified that it was worth $16,000. She specifically argues that Husband's testimony was not credible because he could not recall specific prices, whereas she could, and therefore the district court erred in crediting Husband's "conjecture and speculation."

**{19}** However, the district court is allowed to make credibility judgments and resolve conflicts in the testimony of witnesses. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531 ("We recognize that the district court heard conflicting evidence on some matters, but we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses."). We will not disturb those judgments on appeal. *Id.* ¶ 46.

## V. The 2006 Chevy Cobalt and the Contents of a Room

**{20}** Finally, Wife appears to argue that she is entitled to be compensated for any contents of the prepping room that have expired, as well as $6,500 for a working vehicle. As far as we can ascertain, the district court found that Wife is entitled to the relief she seeks and ordered Husband to pay Wife the value of these divided community assets. The district court's order states that Wife is entitled to $1,500 for the value of half the prepping room and $6,500 for the Chevy Cobalt, and that "[Husband] shall pay [Wife] money due within sixty (60) days of this ruling." Wife has not developed her argument further with citations to the record demonstrating any error related to these two pieces of community property, and so we decline to address them further.

## CONCLUSION

**{21}** We affirm.

**{22} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**GERALD E. BACA, Judge**