**R.R. DONNELLY & SONS, Employer, and Gallagher Bassett Services, Inc., Insurance Carrier, Appellants,**

v.

**Cathleen BARNETT, Appellee.**

**No. 01–1510.**

Supreme Court of Iowa.

Oct. 8, 2003.

Charles E. Cutler of Cutler Law Firm, P.C., Des Moines, for appellants.

Martin Ozga of Max Schott and Associates, P.C., Des Moines, for appellee.

CADY, Justice.

In this appeal from judicial review of a workers' compensation decision dismissing an application for alternate medical care by an injured worker, we must consider an employer's future responsibility for unauthorized medical care where the employer has acknowledged the compensability of a portion of the injury. The workers' compensation commissioner dismissed the employee's application for alternate medical care, but held that the employer could not assert lack of authorization as a defense to a future claim by the employee for payment of medical care not authorized. The district court affirmed the decision of the workers' compensation commissioner on judicial review, but the court of appeals reversed the district court by striking that provision of the decision by the commissioner that barred the employer from asserting the lack of authorization as a defense in any future proceeding. We granted further review. On our review, we vacate the decision of the court of appeals and affirm the district court and the workers' compensation commissioner.

### I. Background Facts and Proceedings.

Cathleen Barnett was employed by R.R. Donnelly & Sons (R.R. Donnelly) in Des Moines. She was injured at work in 1998 when her left hand was crushed by a machine. She underwent surgery for the injury, but continued to experience intense and constant pain in her arm, shoulder, neck, and head. Several physicians have diagnosed the pain component of her injury as complex regional pain syndrome. She has not worked since the injury.

Barnett was evaluated and treated at the neurosurgery and pain departments of the University of Iowa Hospitals and Clinics, and was under the care of Richard Leth, M.D., a specialist in pain medicine in Des Moines, for a considerable period of time. She underwent numerous treatments and interventions for her pain, including epidural infusion and medications. Unfortunately, her condition has not improved. Barnett also suffers from mental illness, notably depression. Dr. Leth believed this illness exacerbated her condition and complicated the various treatment efforts. Dr. Leth was authorized to provide medical care to Barnett by R.R. Donnelly and its workers' compensation insurance carrier, Gallagher Bassett Services, Inc. Although R.R. Donnelly paid the cost of her medical care and treatment, Barnett eventually filed a contested claim for benefits with the workers' compensation commissioner.

In July 2000, Dr. Leth reviewed the various treatment options available to Barnett for her pain, including spinal cord stimulation, radiofrequency lesioning, oral medication, and the insertion of a permanent pump to infuse medication. Dr. Leth recommended she pursue spinal cord stimulation, but referred her to M.S. Iqbal, M.D., another pain specialist, for a second opinion. Dr. Leth also recommended continued psychiatric care, combined with a multidisciplinary pain management program for Barnett. However, he believed

Barnett had reached her maximum medical improvement.

Dr. Iqbal recommended Barnett be treated for her pain condition by implanting a Medtronic SynchroMed Infusion System. This apparatus would pump medication to pain receptors in Barnett's spinal cord to inhibit the transmission of pain signals to the brain. On December 19, 2000, Dr. Iqbal requested authorization from R.R. Donnelly to perform the procedure to ensure payment for the treatment would be made. He also indicated the procedure needed to be performed promptly.

R.R. Donnelly did not immediately agree to the procedure, and Barnett filed an application with the commissioner for alternate medical care under Iowa Code section 85.27(4) (2003).[1] The application included medical reports by Dr. Iqbal detailing his evaluation and treatment of Barnett. He also explained his reasons for the necessity of the pump implant.

R.R. Donnelly filed an answer to the application, claiming the treatment recommended by Dr. Iqbal was not reasonable. It also alleged that a significant portion of Barnett's disability claim was psychological in nature and not caused by the work injury. R.R. Donnelly attached numerous medical reports to its answer from Dr. Leth and other physicians who had treated Barnett following her injury. These reports concluded Barnett was not a good candidate for the implant due to her mental illness and because a catheter previously utilized to treat Barnett was unsuccessful.

A telephonic hearing on the application was held and the issue was submitted to a deputy workers' compensation commissioner based on the written record. The deputy commissioner issued a prompt decision. Based on R.R. Donnelly's assertion that a portion of Barnett's claim was psychological and not related to a work injury, the deputy dismissed the application. The deputy found the alternate medical care provisions were not available to Barnett as long as R.R. Donnelly denied liability for a portion of the disability claim. The deputy determined it was "impossible to separate out what portion, if any, of Barnett's pain management needs is physical as opposed to mental." Additionally, the deputy ruled R.R. Donnelly could not defend against any future claim by Barnett for the alternate medical care on the basis that the care was not authorized.

R.R. Donnelly filed a petition for judicial review in the district court. The district court affirmed the decision of the deputy commissioner. It found substantial evidence to support the finding that the employer disputed the claim. It also found that an administrative rule utilized by the deputy commissioner guided the decision. This rule provided for the dismissal of an application for alternate medical care "where the liability of the employer is an issue." Iowa Admin. Code r. 876–4.48(7). The district court also found the corollary of this rule was that an employer who disputes liability and does not authorize medical care might be liable for the cost of such care if liability is ultimately determined.

1. In 2001, the Iowa Code editor added subsection numbers to the previously unnumbered paragraphs of Iowa Code section 85.27 (2001). *See* Iowa Code § 85.27 (Supp.2001); *see also* Iowa Code § 2B.13(1) (2001) (providing the scope of the editorial changes which may be made by the Code editor). Although our rule pertaining to the citation of applicable statutes warrants citation to the 2001 edition of the Iowa Code (pre-numbering), we have chosen to refer to the newly numbered subsections to aid our discussion of section 85.27 in this case.

R.R. Donnelly filed an appeal and we transferred the case to the court of appeals. The court of appeals found R.R. Donnelly should not be precluded from asserting an authorization defense, and modified the decision of the deputy commissioner by striking the provision. The court of appeals reasoned that it would be unfair for the workers' compensation commissioner to deny an application by an employee for alternate medical care but allow the employee the opportunity to relitigate the issue while precluding the employer from using the authorization defense. We granted further review.

## II. Standard of Review.

We apply the standards of Iowa Code section 17A.19 in our review of workers' compensation decisions. Our review "from a district court decision on judicial review of an agency decision ' "is limited to determining whether the district court correctly applied the law in exercising its [review]" ' under Iowa Code section 17A.19(8)." *Excel Corp. v. Smithart,* 654 N.W.2d 891, 896 (Iowa 2002) (citation omitted). The commissioner's factual findings are binding on us " ' "if they are supported by substantial evidence in the record." ' " *Id.* (citation omitted).

## III. Overview of Statutory Scheme.

We begin our resolution of the dispute in this case by reviewing the statute that lies at the core of the parties' disagreement. Iowa Code section 85.27 addresses a variety of medical care issues faced by injured workers, but foremost requires employers to furnish reasonable medical services and supplies "for all injuries compensable under" the Workers' Compensation Act and the Iowa Occupational Disease Law. Iowa Code § 85.27(1). In connection with imposing the obligation on the employer "to furnish reasonable services and supplies to treat an injured employee," the statute in return gives the employer "the right to choose the care." *Id.* § 85.27(4). However, it qualifies this right by requiring the treatment to be "offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee." *Id.; accord West Side Transp. v. Cordell,* 601 N.W.2d 691, 693 (Iowa 1999) (the right to select care is a qualified right). The statute anticipates that disputes may arise between employers and injured employees over the reasonableness of the medical care provided by the employer. The statute provides, in relevant part:

> If the employee has reason to be dissatisfied with the care offered, the employee *should* communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee *may* agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner *may,* upon application and reasonable proofs of necessity therefor, allow and order other care.

Iowa Code § 85.27(4) (emphasis added). The statute outlines a procedure for the commissioner to hear and decide disputes upon the filing of an application for alternate medical care. *See id.* The procedure permits disputes over the medical care for compensable injuries to be quickly resolved in advance of a contested case hearing on a claim for workers' compensation benefits. *See id.* If the treatment provided by the employer is not prompt, not "reasonably suited to treat the injury," or is unduly inconvenient to the employee, the commissioner has authority to order the alternate care. *West Side Transp.,* 601 N.W.2d at 693. The burden to prove that the care authorized by the employer is unreasonable is on the employee. *Pirel-*

*li–Armstrong Tire Co. v. Reynolds,* 562 N.W.2d 433, 436 (Iowa 1997).

Two other rules have surfaced that impact the resolution of this case. The first is an agency rule governing hearings for alternate care. This rule states, in relevant part:

> Application cannot be filed under this rule if the liability of the employer is an issue. If the application is filed where the liability of the employer is an issue, the application will be dismissed without prejudice.

Iowa Admin. Code r. 876–4.48(7). This was the rule used by the deputy commissioner to dismiss the application for alternate medical care.

■ The second rule has been referred to throughout these proceedings as the "authorization defense." This defense is derived from the right of the employer to authorize medical care under section 85.27, and generally means an employer who is providing reasonable medical care to an employee is not responsible to pay for unauthorized medical care. Beyond this general definition, the parties dispute the scope of this defense.

## IV. Arguments of the Parties.

Both parties seem to agree that an employer, prior to any contested case hearing on a workers' compensation claim, is not responsible to furnish medical care when liability for the injury is disputed. However, Barnett takes the position, adopted by the deputy workers' compensation commissioner and the district court, that an employer cannot deny liability for an injury, so as to preclude the commissioner from authorizing alternate care, and then later defend against an employee claim for payment of the unauthorized medical care on the basis that the care was unauthorized under section 85.27. Barnett asserts that an employer loses the right to direct medical care under section 85.27 when the employer denies liability for an injury, in whole or in part.

R.R. Donnelly does not dispute Barnett's general approach, but claims it does not apply when an employer acknowledges the compensability of one condition of an injury, as R.R. Donnelly did by acknowledging the compensability of Barnett's physical injury, but does not acknowledge the compensability of another condition, as R.R. Donnelly did by denying liability for Barnett's mental injuries. R.R. Donnelly takes the position, adopted by the court of appeals, that it is entitled to control the medical care for those conditions it acknowledges are compensable, and this power to control allows it to assert the authorization defense when a worker seeks payment for unauthorized care. Otherwise, R.R. Donnelly claims, an injured worker could circumvent the authorization process under section 85.27 by simply asserting a noncompensable condition along with a compensable condition. In such a situation, as in this case, R.R. Donnelly alleges an employer would be forced to either acknowledge total compensability in order to maintain its control over the medical care or lose the right to authorize any care.

## V. Alternate Medical Care.

■ An alternate medical care claim brought by an injured worker prior to a final determination of liability of an employer has its roots in the statutory duty of an employer to provide medical care. This duty, however, is imposed only when the employer does not contest the compensability of the injury. *See* Iowa Code § 85.27(1). This is an important proposition under the statute because it means the issue of compensability is totally removed from the alternate medical care process. Instead, the commissioner's role

under section 85.27 at this stage is limited to determining the reasonableness and necessity of medical care sought by an employee as an alternative to the care furnished by the employer. Thus, if a compensability issue arises in the course of an alternate care dispute, the commissioner cannot order that the alternate care sought by the employee be furnished by the employer prior to a determination of the compensability of the injury in a contested case proceeding or some other proceeding. *See* Iowa Admin. Code r. 876–4.48(7) ("Petitions for alternate care where liability of the employer is at issue should be filed pursuant to rule 4.1."). Administrative rule 4.48 is consistent with this approach. *See id.* r. 876–4.48.

 On the other hand, in those cases where compensability of the injury is not at issue and the employer furnishes medical care to the employee, the commissioner is authorized to order the employer to provide alternate care if the employee establishes the alternate medical claim upon reasonable proof of necessity for the care.[2] Iowa Code § 85.27(4); *see West Side Transp.*, 601 N.W.2d at 693–94 (commissioner can order alternate care upon sufficient proof). If the commissioner orders alternate care, the employer is required to furnish the care. Of course, if the commissioner finds the employee has failed to establish the necessity for the alternate care, the employer has no responsibility to furnish or pay for such care. Nevertheless, such a finding by the commissioner does not mean the employee

may not still choose to obtain the alternate care. It only means the employer will not be responsible for the expense of the care. If the employee chooses to obtain the alternate care after the commissioner has denied a petition for alternate care on its merits, the employee will be responsible for the expense. Thus, the employer's statutory "right to choose the care" under section 85.27(4), commonly referred to as the right to control and direct medical care, does not prevent an employee from obtaining alternate care against the directions of the employer. Instead, it enables the employer to assert an authorization defense in the event the employee later seeks to have the employer pay for the unauthorized care. The denial of a petition for alternate care on the merits implies the employer has attained its qualified right under the statute to choose medical care.

 Like the "right to choose the care," the authorization defense is limited in its scope. While it applies to cases when the commissioner has denied a petition for alternate care on its merits, the defense does not apply to cases where the commissioner has denied a petition for alternate care on procedural grounds that prevent the commissioner from adjudicating the merits of a petition, such as a dispute over the compensability of the injury. Under such circumstances, there can be no implicit finding that the employer has satisfied its duty to furnish reasonable medical care and has no obligation to

---

**2.** We emphasize that the commissioner's ability to decide the merits of a section 85.27(4) alternate medical care claim is limited to situations where the compensability of an injury is conceded, but the reasonableness of a particular course of treatment for the compensable injury is disputed. Although R.R. Donnelly acknowledges the compensability of the injury, the dispute in this case cannot be characterized as a dispute over the reason-

ableness of treatment. The reason R.R. Donnelly claims the alternate care is unreasonable is because it is sought for a medical condition that is not compensable. Thus, the commissioner cannot decide the reasonableness of the alternate care claim without also necessarily deciding the ultimate disputed issue in the case: whether or not the medical condition Barnett was suffering at the time of the request was a work-related injury.

furnish alternate care. Thus, the issue is properly left for future determination.

R.R. Donnelly's argument in support of the continued viability of the authorization defense following the commissioner's denial of the petition for alternate care in this case fails to consider the limited nature of the authorization defense. R.R. Donnelly asserts it is entitled to continue to direct the course of treatment for Barnett by separating compensable from uncompensable medical conditions, so that it can continue to use the authorization defense as to those conditions it agrees are compensable. Yet, such a distinction between compensatory and noncompensatory conditions does not permit the employer to assert the authorization defense for the alternate medical treatment at issue in this case. Once an employer takes the position in response to a claim for alternate medical care that the care sought is for a noncompensatory injury, the employer cannot assert an authorization defense in response to a subsequent claim by the employee for the expenses of the alternate medical care. Of course, this approach does not mean the authorization defense may not be available for other forms of alternate medical care obtained by an employee not authorized by the employer or not submitted to the commissioner under section 85.27.

R.R. Donnelly injects other issues into the case to help justify its claim that the denial of the compensability of one medical condition by an employer should not result in the loss of the right to continue to choose medical care for the injured worker, and to assert the authorization defense, for medical conditions that are accepted as compensable as if the employer had denied the entire claim. In particular, R.R. Donnelly claims that the record before the commissioner did not support an implicit finding by the commissioner that it denied the entire claim. It also claims such an implicit finding operates to alter the burden of proof to establish compensability of an injury. Finally, R.R. Donnelly argues that there was no evidence to support a finding that Barnett properly invoked the alternate care provisions of the statute by giving R.R. Donnelly a reasonable opportunity to resolve the dispute before filing a petition.

We need not address the substance of these issues. The decision by the commissioner in this case to deny the petition for alternate care, and to bar the authorization defense, was not tantamount to a finding that R.R. Donnelly denied the compensability of the entire claim, and the finding made by the deputy commissioner that the compensability of the condition could not be separated does not impact the operation of section 85.27(4). Under the statute, R.R. Donnelly simply never acquired an authorization defense to assert. Furthermore, issues as to the timeliness of the petition for alternate care were rendered moot by the dismissal of the petition by the commissioner.

The important factor from our review of the record is there was substantial evidence before the commissioner that R.R. Donnelly denied compensability of a condition or injury Barnett allegedly suffered and for which she sought alternate medical treatment or care. This evidence and admission were sufficient to support the deputy commissioner's decision to dismiss the application by Barnett for the requested alternate medical care without deciding the merits of the claim, and to bar R.R. Donnelly from asserting a defense as to the expenses of the care that would only be available when an application is decided on the merits. This approach under the statute does not preclude R.R. Donnelly from later contesting liability for this treatment on the basis of the lack of compensability

of the injury or unreasonableness of the care, nor does it alter R.R. Donnelly's right to choose care for those injuries that it concedes are compensable.

## VI. Conclusion.

We conclude the workers' compensation commissioner and the district court properly applied the statute to dismiss the petition and bar the applicability of the authorization defense. We vacate the decision of the court of appeals and affirm the district court and the workers' compensation commissioner.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**