# IN THE COURT OF APPEALS OF IOWA

No. 21-1559
Filed August 31, 2022


**WEST CENTRAL COOPERATIVE and FARMLAND MUTUAL INSURANCE COMPANY,**
Plaintiffs-Appellants,

**vs.**

**BRETT V. SULLIVAN,**
Defendant-Appellee.
_____


Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.


The employer and its insurance company appeal from the district court ruling affirming the decision of the workers' compensation commissioner ordering the employer to authorize a medical procedure requested by the employee. **AFFIRMED.**


Jeffrey W. Lanz of Huber, Book, Lanz & McConkey, P.L.L.C., West Des Moines, for appellants.

Thomas M. Wertz and Mindi M. Vervaecke of Wertz Law Firm, P.C., Cedar Rapids, for appellee.


Considered by Bower, C.J., Chicchelly, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**POTTERFIELD, Senior Judge.**

Brett Sullivan, who was injured in a workplace accident in 2011, sought authorization from his former employer[1] for a trial of a spinal cord stimulator (SCS) to treat chronic back pain.[2] The employer denied liability, arguing Sullivan's chronic back pain was not causally related to the 2011 accident. Alternatively, the employer maintained the SCS trial was not a reasonable and necessary treatment for the pain and claimed Sullivan should instead start a general flexibility exercise program and a consistent walking program, as at least one doctor recommended.

The workers' compensation commissioner concluded Sullivan's chronic back pain was causally related to the 2011 accident and that the SCS trial was a reasonable and necessary treatment for the condition. On rehearing, the commissioner also concluded that the employer did not actually authorize any alternate treatment, which was unreasonable. The employer was ordered to authorize the SCS trial.

On judicial review, the district court concluded substantial evidence supported the conclusions that Sullivan's chronic back pain is causally related to the work injury and that Sullivan proved the treatment offered by the employer was unreasonable. The court also concluded that, while the commissioner applied the wrong test in the initial ruling, the commissioner corrected that mistake by applying

---

[1] At the time of his injury, Sullivan was employed by West Central Cooperative. The employer's insurance company is Farmland Mutual Insurance Company. For ease, we refer to West Central Cooperative and Farmland Mutual Insurance Company collectively as "the employer" throughout this opinion.

[2] Sullivan also sought authorization for surgery on his left knee. The workers' compensation commissioner ruled in Sullivan's favor; the employer does not contest that ruling on appeal.

the correct test in the ruling on the motion for rehearing—to the same result. So, the court affirmed the order to authorize the SCS trial.

The employer appeals.

## I. Background Facts and Proceedings.

Sullivan experienced a workplace injury in October 2011 when the wheel loader he was driving was struck by a train. His initial assessment showed injuries including L3 and L4 fractures of the transverse processes, wedge fractures of T8 and T9 vertebral bodies, and a fracture of the T8 spinous process—among others.[3] Sullivan's injuries required a lengthy hospital stay and a number of surgeries. The employer admitted the injury and paid Sullivan lost time and permanent partial disability benefits.[4]

Sullivan returned to work at West Central Cooperative, where he remained employed for a couple of years—until the parties entered into a mutual separation agreement in 2013. Even after, Sullivan continued to need and receive medical treatment for his injuries stemming from the 2011 accident.

As time progressed, Sullivan continued to report back pain to his treating doctors. One of them, Dr. Devon Goetz, referred Sullivan to Dr. Christian Ledet for pain management. Dr. Ledet evaluated Sullivan on June 22, 2018, ordering an EMG and pelvic and lumbar spine MRIs. Dr. Ledet initially recommended medication-based treatments. In December 2018, when Sullivan reported he had

---

[3] Sullivan also sustained injuries to his ribs, right hip, right shoulder, and head.
[4] Six issues arising from the workplace injury were part of a contested case; the commissioner's decision was challenged, and a panel of this court issued a ruling affirming on the issues raised on appeal. *See Sullivan v. W. Cent. Coop.*, No. 18-1811, 2019 WL 3946004, at *3–4 (Iowa Ct. App. Aug. 21, 2019).

not experienced significant improvement from the medication, Dr. Ledet suggested Sullivan proceed with the SCS trial. This required Sullivan to first complete a biopsychological evaluation and a thoracic spine MRI, which were done in February 2019. Up to this point, the employer authorized and paid for all of Dr. Ledet's treatment recommendations. The employer then sent Sullivan to Dr. Joseph Chen for an independent medical examination (IME).

Dr. Chen opined the physiological injuries sustained by Sullivan to his back "have healed in the intervening 7 years." Dr. Chen listed Sullivan's "current diagnosis of his back pain condition is chronic mechanical and myofascial thoracic low back pain." He continued:

> The development of chronic pain is multifactorial and best characterized within a biopsychosocial model of pain that includes not only physical trauma, but also personal psychological and social factors that contribute to an individual's experience of pain. . . .
> Mr. Sullivan's complaints of severe pain that greatly interferes with his life and subsequently leading to a high ODI score to be a result of Fear Avoidance Beliefs and Behaviors along with cognitive distortions as noted on his Pain Catastrophizing Scale responses. Mr. Sullivan also reports severe anxiety and depression that further contributes to his ongoing pain leading to further fear avoidance and pain catastrophization.

Dr. Chen opined that the SCS trial was not causally related to Sullivan's worked-related back injury, noting that Sullivan's "recovery took a downward course after he separated from his employer nearly 2 years after his injury"—suggesting the chronic pain was linked to his unemployment and the possible loss of his self-identity, perceived self-worth, or a negative change in financial stability. Additionally, Dr. Chen denied that the SCS was reasonable or necessary to treat Sullivan's chronic back pain because it would "not address [his] fear avoidance beliefs and behaviors nor his pain catastrophization, rumination, anxiety, or

depression." Rather than the SCS trial for treatment of his chronic back pain, Dr. Chen suggested that Sullivan "may eventually be suited to pursue an intensive cognitive behavior therapy [program] with a pain psychologist." He questioned whether the treatment would be effective at the time of his report because he was "not convinced" Sullivan was "receptive towards understanding chronic pain in a different manner," namely that his "chronic pain [is] no longer actual tissue damage which should have healed in the interim 7+ years post trauma but of more neurological hypersensitivity that has evolved and intensified after failed or unsuccessful treatments of isolated body parts." He recommended Sullivan start a general flexibility exercise program and a consistent walking program.

In March 2019, the employer denied Sullivan's request for the SCS trial, relying on Dr. Chen's opinion to state "that the need for the [SCS] is not causally related to the 10/02/2011 work injury." Sullivan filed an application for alternate medical care, seeking authorization for the SCS trial from the commissioner. *See* Iowa Code § 85.27 (2019). The employer responded, disputing liability and attaching the report from Dr. Chen.

The agency dismissed Sullivan's application for alternate medical care due to the employer's denial that "the condition for which treatment is sought is causally connected to the work injury" and because "[t]he summary provisions of Iowa Code section 85.27 as more particularly described in [Iowa Administrative Code rule 876-4.48] are not designed to adjudicate disputed compensability of a claim."

Sullivan moved for rehearing, stating that "[m]edical benefits for [Sullivan's] low back were established by the adjudication in [the] arbitration decision filed December 21, 2015," and arguing the employer's "denial of liability was

inappropriate given the judicial adjudication of the injury." He noted it was Dr. Ledet—whom the employer authorized as a treating physician—who recommended the SCS trial. The employer resisted,[5] and the agency denied the motion.

---

[5] In paragraph (3) of his motion for rehearing, Sullivan claimed:

> Medical benefits for Claimant's low back were established by adjudication in Arbitration Decision filed December 21, 2015, in File No. 5050594. That decision recognized the medical opinions of Dr. [Charles] Mooney wherein he established an 8% impairment to the whole person applicable to the DRE Lumbar Category II due to L3-L4 fractures of the transverse processes, as well as the opinions of Dr. Kuhnlein.

In making this claim, Sullivan relies on the 2015 arbitration decision, which, in its "findings of fact and conclusions of law" section, quoted Dr. Mooney. The arbitration decision states:

> On September 13, 2013, defendants sent claimant to Charles Mooney, M.D., MPH, for an [IME]. Dr. Mooney provided the following impairment ratings:
> IMPAIRMENT RATINGS:
> It is my opinion based on the 5th edition AMA Guide that Mr. Sullivan demonstrates the following impairments as it relates to the injuries discussed above:
> THORACIC AND LUMBAR SPINE:
> It is my opinion based on table 15-3, that Mr. Sullivan has an 8% impairment of the whole person applicable to DRE lumbar category 2, due to L3-L4 fractures of the transverse processes,
> Further, it is my opinion based on table 15-4, that he demonstrates an 8% impairment rating of the whole person based on DRE thoracic category 2, due to wedge fracture T9 vertebral body and fracture of the T8 spinous process

The decision went on to quote other doctors who offered different opinions. And, contrary to Sullivan's assertion, the commissioner did not adopt Dr. Mooney's ratings or opinions. Still, in its resistance to Sullivan's motion for rehearing, the employer:

> admit[ted] paragraph 3 to the extent that the Arbitration Decision found claimant's back condition related, found claimant suffered an 8% BAW impairment rating for the lumbar fractures, and awarded future medical benefits for claimant's back condition. However, the Arbitration Decision does not preclude defendants from addressing causation of claimant's future back condition and need for ongoing treatment at a date 3+ years after the Arbitration Decision.

Sullivan initiated the contested case at issue in this appeal, seeking approval of the requested medical benefit. The arbitration hearing took place in May 2020, at which Sullivan testified he "never" had "any low back problem" until the October 2011 accident and that he did not have any "new injuries" to his low back since the work injury. In contrast, he testified the severity and frequency of the pain had worsened; he described it as "stabbing," "burning," and "the absolute worst." On cross-examination, Sullivan agreed that his back pain had gotten worse in 2018 and 2019 and that a recent nerve test did not show any radiculopathy from his back. The employer resisted, asserting Sullivan's current back condition and the need for the SCS trial were not caused by the work injury and the SCS trial was not reasonable and necessary treatment for Sullivan's chronic pain.

In the written arbitration decision, the deputy commissioner denied the request for alternate medical care, concluding the SCS trial was not a reasonable and necessary treatment and ruling, "Dr. Chen has outlined a reasonable course of treatment that could serve as an alternative to a trial of a [SCS]."

Sullivan moved for rehearing, asking the deputy to address the question of whether the 2011 work injury caused his chronic back pain. The employer resisted, and the deputy denied the motion, concluding the cause of the back pain did not need to be addressed because Sullivan failed to prove the SCS trial he was requesting was a necessary treatment for the back pain.

Sullivan appealed the decision. In a May 2021 ruling, the commissioner[6] first addressed the causation question that the deputy "leapfrogged," reversing the deputy and finding "while smoking and diabetes may contribute to [Sullivan's] back pain, it is undisputed that [his] back pain did not begin until after that incident and was chronic thereafter. . . . [Sullivan's] chronic pain symptoms are causally related to [his] 2011 work injury." Additionally, the commissioner concluded the SCS trial was intended to treat Sullivan's "work-related chronic pain symptoms" and so was "causally related to [the] work injury." The commissioner then turned to the question of whether the SCS trial was reasonable and necessary to treat Sullivan's chronic pain. Given Dr. Ledet's "specific expertise . . . when it comes to treatment of chronic pain and implementation of neuromodulation devices," the commissioner found his opinion that the SCS trial is appropriate treatment "to be most persuasive." Because Sullivan met his burden to establish causation and prove that the requested treatment was reasonable and necessary, the commissioner ordered the employer to "promptly authorize and pay for the [SCS] recommended by Dr. Ledet."

The employer requested rehearing, challenging the credibility determinations made by the commissioner as to the various experts and the causation determination. Additionally, the employer claimed the commissioner used the wrong standard when considering whether the SCS trial should be authorized, arguing that because Sullivan sought alternate medical care, he had

_____

[6] The commissioner delegated authority to a different deputy commissioner to issue the final agency decision on appeal. We ascribe all actions taken by the deputy commissioner acting on behalf of the commissioner to the commissioner.

the burden of proving the care authorized by the employer was unreasonable. Sullivan resisted; he argued the employer was attempting to "reframe the issue as an alternative care question," which was inaccurate because the employer denied liability for the chronic back pain and, as a result, Sullivan's application for alternate medical care was dismissed. He maintained that, because the employer denied the 2011 injury was the cause of his chronic back pain, it "made no offer of alternative care," which precluded him from having to establish any such alternative care was unreasonable. According to Sullivan:

> There is no evidence, and at no time, did [the employer] offer any alternative to the [SCS] trial. To so argue flies in the face of their denial of liability/causation. [The employer's] position essentially is we have no liability for the current back pain and we are offering treatment. [They] are attempting to have the best of both worlds.

The commissioner denied the petition for rehearing. First, the commissioner concluded it did not use the wrong standard; this "case . . . [was] not the traditional alternate medical care setting" because the employer denied liability for Sullivan's chronic back pain. In the alternative, the commissioner determined that even if the proper question was whether the employer authorized a reasonable alternative care—for which the employer relied on Dr. Chen's recommendations regarding stretching and walking—"the employer offered no evidence that they were actually offering [Sullivan] the treatment recommended by Dr. Chen. . . . By denying liability and not offering any care, including that recommended by Dr. Chen, [the] defendants abandoned their obligation to provide care."

The employer sought judicial review.

The district court determined substantial evidence supported the commissioner's conclusion that Sullivan's chronic back pain is causally connected to his 2011 work injury. But the court ruled the commissioner was wrong to conclude the employer forfeited its right to direct medical care when it denied Sullivan's chronic back pain was caused by the 2011 accident. Relying on case law,[7] the court drew a distinction between denying an injury completely—which it found the employer had not done because it admitted Sullivan suffered a back injury in the original accident and acknowledged future medical benefits were awarded for his back condition—and denying *the extent* of the current injury was causally related to the workplace injury. The court reasoned that because the employer was not liable for Sullivan's chronic back pain until the commissioner ruled the back pain was causally related to the workplace injury, and because Sullivan was seeking authorization for a future medical procedure—not reimbursement for care he obtained during the time period compensability was at question—Sullivan had to "establish the claim for alternative medical care by proving the alternate medical care is reasonable and necessary, or that the medical care provided by the employer is unreasonable." The court concluded the commissioner "correctly applie[d] the test and burden of proof" in the ruling on the

---

[7] *See Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 201 (Iowa 2010) ("[W]e reject the notion that an employer loses the right to choose medical care under section 85.27 when the employer acknowledges the compensability of a work-related injury and furnishes care but later disputes the nature and extent of the disability. The employer's right to control medical care attaches under the statute when the employer acknowledges compensability following notice and furnishes care to the employee, and it remains with the employer under the statute until the employer denies the injury is work-related, withdraws authorization of the care, or until the commissioner orders alternative care.").

motion for rehearing when the court considered whether any treatment authorized by the employer was unreasonable. The court continued:

> Under [*Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 124 (Iowa 1995)], the test is not what is the most appropriate treatment plan or the more desirable treatment plan, but whether the treatment plan offered by [the employer is] unreasonable. [The commissioner] found prompt care was not provided by [the employer] at the inception of the injury had compensability been acknowledged. Due to care not being offered promptly, the Agency has the authority to order alternate care, including care from a doctor chosen by the claimant. [The employer] argue[s] they did offer Dr. Chen's recommendations at the time of the hearing. They contend they introduced evidence of reasonable care as recommended by four physicians. The Court acknowledges there are references in the record to Dr. Chen's recommendation of a general flexibility program being a reasonable treatment plan for Sullivan's chronic back pain. However, our task is not to determine whether there is evidence supporting a different finding, but rather, viewing the record as a whole, supports the findings actually made. As a result, [the commissioner's] findings are supported by substantial evidence

(Citations omitted). The district court affirmed the commissioner's ruling ordering the employer to authorize and pay for the SCS trial. The employer appeals.

## II. Standard of Review.

"We review a district court decision reviewing an agency action to determine if we would reach the same result as the district court in our application of the Iowa Administrative Procedure Act." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 653 (Iowa 2013). Like the district court, we apply the standards of judicial review set forth in Iowa Code chapter 17A—the Iowa Administrative Procedure Act. *See* Iowa Code § 17A.19(10); *see also Taylor v. Iowa Dep't of Human Servs.*, 870 N.W.2d 262, 266 (Iowa 2015). "The applicable standard of review depends upon the error asserted by the petitioner." *Colwell v. Iowa Dep't of Human Servs.*, 923 N.W.2d 225, 231 (Iowa 2019).

**III. Discussion.**

Here on appeal, the employer argues there is not substantial evidence to support the commissioner's ruling that (1) Sullivan's chronic back pain is causally related to his 2011 work injury or (2) that the SCS trial is reasonable and necessary treatment for the back pain. The employer also challenges whether the commissioner's determination that the treatment being provided by the employer was unreasonable constitutes an abuse of discretion or an error at law.

**A. Whether substantial evidence supports the conclusion Sullivan's chronic back pain is causally related to his 2011 workplace injury.**

"Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). "We will therefore only disturb the commissioner's finding of medical causation if it is not supported by substantial evidence." *Id.* (citing Iowa Code § 17A.19(10)(f)). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of the fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). In conducting our review, we "determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Pease*, 807 N.W.2d at 845. In other words, "[e]vidence is not insubstantial merely because different conclusions may be drawn from" it, and "evidence may be substantial even though we may have drawn a different conclusion" than the commissioner. *Id.*

Here on appeal, the employer challenges the commissioner's conclusion that Sullivan's chronic back pain is causally connected to the 2011 workplace accident. The employer argues the commissioner should have given more weight to the opinions of Dr. William Boulden, Dr. Eden Wheeler, and Dr. Chen—who each opined that Sullivan's current back condition is not related to the trauma from the 2011 accident. The employer argues these experts' opinions are more credible than those of Dr. Ledet and Dr. John Kuhnlein—who each opined there was a causal connection—and offers a variety of reasons it believes this to be true.

"Medical causation 'is essentially within the domain of expert testimony.'" *Pease*, 807 N.W.2d at 845 (citation omitted). And it is the commissioner, as the trier of fact, who determines "whether to accept or reject an expert opinion." *Id.*; *see also Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 464 (Iowa 1969) ("Acceptance or rejection of the expert's testimony is within the 'peculiar province' of the . . . commissioner."). Nothing in our standard of review gives us the authority to make credibility findings anew. *See Taylor*, 870 N.W.2d at 266 (noting it is the agency's duty to determine the credibility of witnesses and we "must give appropriate deference to the agency's findings"). Because the commissioner found the opinions of Dr. Ledet and Dr. Kuhnlein to be more credible, and those opinions support the conclusion that Sullivan's chronic back pain is causally related to his workplace injury, substantial evidence supports the commissioner's causation determination.

**B. Whether substantial evidence supports the conclusion the SCS trial is reasonable and necessary treatment for Sullivan's chronic back pain.**

Next, the employers argue that even if Sullivan's chronic back pain is causally related to the workplace injury, there is not substantial evidence to support the commissioner's determination that the SCS trial is reasonable and necessary treatment for the back pain.[8] *See* Iowa Code § 85.27(1)(a). But as it was in the prior argument, the employer's challenge boils down to reasons we should credit the opinions of some experts over those the commissioner found to be credible and more persuasive—Drs. Kuhnlein and Ledet. As we stated before, "the weight to be given conflicting expert opinions is within the provision of the commissioner." *Pease*, 807 N.W.2d at 852. And because our "review is not de novo, [we] must not reassess the weight to be accorded various items of evidence." *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993).

Therefore, substantial evidence supports the commissioner's determination that the SCS trial is a reasonable and necessary treatment for Sullivan's chronic back pain.

---

[8] The employer has a duty to "furnish *reasonable* surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance, and hospital services and supplies" for all compensable injuries and a duty to "furnish *reasonable and necessary* crutches, artificial members, and appliances." *See* Iowa Code § 85.27(1)(a) (emphasis added). Presumably both parties are in agreement that the device involved in an SCS trial is an "appliance" within the meaning of section 85.27. *See* Iowa Admin. Code r. 876-8.5 ("Appliances are defined as hearing aids, corrective lenses, orthodontic devices, dentures, orthopedic braces, or any other artificial device used to provide function or for therapeutic purposes.").

**C. Whether the commissioner's determination that the treatment being provided by the employer was unreasonable constitutes an abuse of discretion or an error at law.**

In its decision, the commissioner determined the SCS trial was reasonable and necessary treatment for Sullivan's chronic back pain and ordered the employer to authorize and pay for it. The employer moved for rehearing; it argued the commissioner had not applied the correct standard, asserting, "By seeking alternate medical care in challenging the employer's choice of treatment, the claimant has the burden of proving that the care authorized by the employer is unreasonable." *See Long*, 528 N.W.2d at 123 ("The ultimate question is whether . . . the employer met its obligation under Iowa Code section 85.27 . . . . By challenging the employer's choice of treating—seeking alternate care—[the claimant] has assumed the burden of proving that the authorized care is unreasonable."). The commissioner denied the motion for rehearing; it recognized this was "not the traditional alternate medical care setting" as presented in *Long* but also ruled in the alternative that if *Long* applied, the employer's denial of liability and failure to offer any care was unreasonable. The district court affirmed this ruling on judicial review.

As it did in its motion for rehearing to the commissioner, the employer advocates that we apply the standards of an alternate medical care proceeding to this case—i.e., determining whether the treatment actually authorized by the employer was unreasonable before ordering the treatment requested by Sullivan— and that we apply those standards to the employer's actions as of March 2021— when compensability had already been determined by the commissioner and the

employer suggested Sullivan should utilize the walking and stretching regimen instead of the SCS trial. The employer argues that because it had no obligation to provide reasonable treatment until compensability was decided, it would be wrong to hold its earlier denial of treatment against it.

In an alternate medical care setting, the employee has the burden to prove the care actually being offered by the employer is unreasonable. *See Pirelli-Armstrong Tire Co. v. Reynolds*, 562 N.W.2d 433, 436 (Iowa 1997). The employer's right to direct care—and the presumption that the care is reasonable—stems from the employer's duty to provide reasonable care. *Bells Bros.*, 779 N.W.2d at 204 ("The right to control medical care emanates entirely from the duty to furnish medical care for injuries compensable under the workers' compensation laws."). But once the employer denies liability, the employer no longer has the right to direct care and a proceeding for alternate medical care is no longer proper. *See R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 197 n.2 (Iowa 2003) ("We emphasize that the commissioner's ability to decide the merits of a section 85.27(4) alternate medical care claim is limited to situations where the compensability of an injury is conceded, but the reasonableness of a particular course of treatment for the compensable injury is disputed."); *see also Bells Bros.*, 779 N.W.2d at 207 ("The employer's right to control medical care attaches under the statute when the employer acknowledges compensability . . . and it remains with the employer under the statute until the employer denies the injury is work-related . . . .").

In demanding that the *Long* standard applies to this case, the employer is attempting to—as Sullivan charged in his resistance to the employer's motion for

rehearing—"have the best of both worlds." The employer denied liability for Sullivan's chronic back pain.[9] It filed an answer to Sullivan's application for alternate medical care, checking the box on the form to show it disputed liability of the claim. Attached to its answer was the report of Dr. Chen, which opined the physiological injuries sustained by Sullivan to his back "have healed in the intervening 7 years" and suggesting other causes for the condition. And there could be no misunderstanding about what it was doing because once the agency dismissed Sullivan's application, he sought rehearing and argued the denial of liability was inappropriate. The employer resisted, explicitly stating it "denied [Sullivan's] current back complaints and the need for the [SCS] trial are causally related to the work injury." In response to Sullivan's claim that the employer could

---

[9] The employer attempts to recharacterize its denial of liability as challenging just the "nature and extent" of Sullivan's disability. In *Bell Brothers*, an employee suffered a foot injury while at work and, over the course of years, continued to experience pain. 779 N.W.2d at 196. The doctor authorized by the employer diagnosed the employee with tendinitis and recommended physical therapy; the employee's doctor—who was not authorized to treat the employee—made a different diagnosis and recommended surgery. *Id.* at 197. Without receiving approval from the employer or seeking an order from the commission for alternate medical care, the employee underwent surgery with his unauthorized doctor. *Id.* at 198. When the employee sought reimbursement after the fact, the commission found he was entitled to recover the medical expenses because the employer disputed liability. *Id.* at 198–99. Our supreme court reversed, concluding the employer had acknowledged compensability and provided the employee care; the right to control medical care attached at that point and it remained with the employer because it had never "denie[d] the injury is work-related, withdraw[n] authorization of the care, or [had] the commissioner order[] alternative care." *Id.* at 207.

In *Bell Brothers*, the employer disagreed with the nature and extent of the employer's injury as diagnosed by the employee's chosen doctor, but the employer never denied it was liable for the employee's foot injury. In contrast, in this case, the employer not only disagreed with the extent and nature of Sullivan's injury— as Drs. Ledet and Kuhnlein diagnosed it—but also repeatedly, in writing denied liability for the injury once Sullivan sought medical care.

not disregard the treatment recommendations of an authorized treating physician—Dr. Ledet—the employer responded that it "had the right to question an authorized treating physician's recommendations by having an IME and then deauthorize the authorized treating physician based upon the opinions of the IME physician."

Because of the employer's denial of liability, Sullivan had to file a contested case petition—moving the issue outside the fast-tracked alternate-medical-care proceedings. *See* Iowa Code § 85.27(4) (requiring the commissioner to issue a decision on a request for alternate medical care "within ten working days of receipt of an application for alternate care made pursuant to a telephone hearing or within fourteen working days of receipt of an application for alternate care made pursuant to an in-person hearing"); *see also R.R. Donnelly*, 670 N.W.2d at 195 ("The procedure [outlined in section 85.27(4)] permits disputes over the medical care for compensable injuries to be quickly resolved . . . ."). And it took almost two years after he filed his application for alternate medical care before the commissioner issues its appeal decision, which concluded the employer was liable for Sullivan's chronic back pain.

The employer does not get the deference it is afforded in an alternate-medical-care proceeding after it denied liability and caused that proceeding to be dismissed; this case was not decided in an alternate medical care proceeding. *See R.R. Donnelly*, 670 N.W.2d at 195 (Iowa 2003) (recognizing that section 85.27(4) both obligates the employer to furnish reasonable services and supplies to treat an injured employee and gives the employee the right to choose the care). And once the commissioner determined Sullivan's chronic back pain was

compensable, it could order the employer to authorize the care sought by Sullivan—without forcing Sullivan to restart the alternate-medical-care proceeding over again with a new application upon which the employer could not dispute liability or giving the employer the benefit of allowing it to offer up what it would now authorize as treatment and considering whether that treatment was unreasonable. *See Bell Bros.*, 779 N.W.2d at 204 ("If the employee establishes the compensability of the injury at a contested case hearing, then the statutory duty of the employer to furnish medical care for compensable injuries emerges to support an award of reasonable medical care the employer should have furnished from the inception of the injury had compensability been acknowledged."); *cf. R.R. Donnelly*, 670 N.W.2d at 197 (noting that when a compensability issue arises in an alternate-medical-care proceeding, "the commissioner cannot order that the alternate care sought by the employee be furnished by the employer" until there is "a determination of the compensability of the injury in a contested case proceeding or some other proceeding").

Insofar as the commissioner—and the district court—applied *Long* to this case, it was in error. Because the employer denied liability for Sullivan's chronic back pain, the proper question was not whether the employer was meeting its obligation to provide reasonable treatment—and it couldn't be; the employer was not offering any. *See Long*, 528 N.W.2d at 123 ("The ultimate question is whether . . . the employer met its obligation under Iowa Code section 85.27 . . . . By challenging the employer's choice of treating—seeking alternate care—[the claimant] has assumed the burden of proving that the authorized care is unreasonable."). However, we agree with the district court and the commissioner

that Sullivan met his burden to establish his chronic back pain is causally related to his 2011 injury and the SCS trial is reasonable and necessary to treat the condition.  We affirm.

**AFFIRMED.**