# IN THE COURT OF APPEALS OF IOWA

No. 21-1851
Filed September 21, 2022

**BRIAN DENEMARK,**
  Petitioner-Appellant,

**vs.**

**ARCHER DANIELS MIDLAND COMPANY,**
  Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

An employee appeals the district court's ruling on judicial review, which affirmed the workers' compensation commissioner's denial of two requests for alternate medical care.  **AFFIRMED.**

Dennis Currell, Cedar Rapids, and Jeff Carter of Jeff Carter Law Offices, P.C., Des Moines, for appellant.

Jean Z. Dickson and Peter J. Thill of Betty, Neuman & McMahon, P.L.C., Davenport, for appellee.

Heard by Ahlers, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Brian Denemark appeals the district court's ruling on judicial review, which affirmed the workers' compensation commissioner's denial of two applications for alternate medical care. He alleges the district court committed legal error by finding the agency had discretion in determining whether to authorize alternate medical care and by finding his employer investigated causation. He also alleges the court erred by making its own legal findings and requiring him to prove his employer had an ulterior motive in denying care. Finally, Denemark contends the district court erred by finding the agency's decision did not conflict with its prior precedent. Because the district court properly applied the law in conducting judicial review of the agency's decision, we affirm.

**I. Background Facts.**

Denemark injured his left arm while working at Archer Daniels Midland Company (ADM)[1] in December 2019. His injury includes a longitudinal tear of the triangular fibrocartilage complex (TFCC). ADM authorized Denemark to receive treatment from Dr. Meiying Kuo at Physician's Clinic of Iowa (PCI), which included two ulnocarpal joint injections. But Denemark reported that his pain began to return one month after the second injection and eventually worsened. As a result, Dr. Kuo recommended at an August 2020 appointment that Denemark undergo arthroscopic surgery and debridement of the TFCC. The surgery was scheduled for October 5.

---

[1] Throughout the opinion, we will refer to both Denemark's employer and its workers' compensation carrier as ADM.

On September 18, ADM informed PCI that it had concerns about Denemark's injury and intended to investigate causation before authorizing surgery. PCI thus cancelled the scheduled surgery.

ADM authorized Denemark's surgery on October 21. It then authorized PCI's request to transfer Denemark's care to the University of Iowa Hospitals and Clinics (UIHC) for the surgery. Denemark was originally scheduled for an appointment with Dr. Ericka Lawler at UIHC on November 24, but the UIHC rescheduled for December 3. ADM provided Denemark with transportation to the appointment.

After the appointment with Dr. Lawler, Denemark scheduled the authorized surgery for December 29. Because of a scheduling conflict, Denemark later rescheduled the surgery for January 12. The UIHC required that Denemark have a pre-surgical screening for COVID-19 the day before surgery.

Although ADM was to provide transportation to both Denemark's COVID-19 screening and surgery, it failed to schedule transportation to the screening. Because Denemark could not obtain a screening on his own in time to receive the results before the scheduled surgery, surgery had to again be rescheduled. The surgery took place on January 29.

**II. Proceedings.**

Denemark petitioned for workers' compensation benefits on October 19, 2020. Between then and his surgery three months later, Denemark filed two applications for alternate medical care. He filed the first application on November 3, alleging that ADM intentionally interfered with the medical care recommended by (1) sending its safety manager to attend Denemark's medical appointments until

January 2020, (2) seeking an improper causation opinion to delay the surgery, and (3) transferring Denemark's care to the UIHC. On November 17, after a hearing, a deputy workers' compensation commissioner denied the application. Although two months had passed since Dr. Kuo recommended Denemark undergo surgery, the deputy commissioner noted that Denemark "[wa]s not seeking an order directing ADM to schedule the surgery or any other treatment" and instead requested to direct his own care. The deputy commissioner did not find the testimony about ADM's safety manager attending medical appointments persuasive to support ongoing interference because the safety manager had not attended an appointment since January 2020. The deputy commissioner found Denemark failed to show ADM "abandoned care or that the care offered [was] ineffective, inferior, or less extensive than the care requested by Denemark."

Denemark filed his second application for alternate care after the UIHC cancelled the January 12 surgery. He alleged ADM intentionally failed to provide transportation to interfere with his medical care. Denemark asked for an order for surgery with Dr. Lawler, uninterrupted follow-up care, and the ability to self-direct his care. During the January 26 hearing, ADM agreed to provide Denemark transportation to the COVID-19 screening and surgery, and follow all of Dr. Lawler's treatment recommendations. The deputy commissioner denied Denemark's request to self-direct his care, finding that ADM followed Dr. Lawler's treatment recommendations and scheduled the recommended surgery, which was postponed by Denemark. Although the rescheduled surgery was cancelled when ADM failed to provide Denemark transportation to the COVID-19 screening, it was rescheduled to take place seventeen days later. The deputy commissioner found

Denemark failed to prove ADM engaged in ongoing interference, that ADM had abandoned care, or that the care ADM offered was ineffective, inferior, or less extensive than the care Denemark requested.

Denemark separately petitioned the district court for judicial review of the denial of both applications for alternate care. In March 2021, the district court consolidated the petitions. In July 2021, the district court entered its ruling on judicial review affirming both decisions.

**III. Discussion.**

The district court may grant relief to a petitioner seeking judicial review of an agency action only when the agency action (1) prejudiced the petitioner's substantial rights and (2) falls within one of the criteria set forth in Iowa Code section 17A.19(10) (2020). *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). On appeal, our review is limited to determining whether the district court correctly applied the law in exercising its review. *See Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 195 (Iowa 2007). If we reach the same conclusions as the district court, we affirm; if not, we reverse or modify. *See id.* Our standard of review therefore depends on the issues raised on appeal. *See Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010).

Beginning with our standard of review, Denemark claims the agency's decisions violate four of the criteria in section 17A.19(10). He alleges the agency's decision was: (1) based on "an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency," *see* Iowa Code § 17A.19(10)(c); (2) based on a determination of fact that is not supported by substantial evidence in the record before the court when

that record is viewed as a whole, *id.* § 17A.19(10)(f); (3) inconsistent with the agency's prior practice or precedents, *id.* § 17A.19(10)(h); and (4) an otherwise unreasonable, arbitrary, capricious, or an abuse of discretion, *id.* § 17A.19(10)(n).

We next turn to the statute providing an employee with means of receiving alternate medical care. Iowa Code section 85.27(4) states that under our workers' compensation statute,

> the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care. . . . The treatment must be offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee. If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee may agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.

This procedure "permits disputes over the medical care for compensable injuries to be quickly resolved in advance of a contested case hearing on a claim for workers' compensation benefits." *R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 195 (Iowa 2003). The commissioner may order alternate care if the treatment provided by the employer is not prompt or reasonably suited to treat the injury, or if the treatment causes "undue inconvenience to the employee." *Id.* The employee bears the burden of proving the medical care authorized by the employer is unreasonable. *Id.* "[W]hen evidence is presented to the commissioner that the employer-authorized medical care has not been effective and that such care is 'inferior or less extensive' than other available care requested by the employee, the commissioner is justified by section 85.27 to order the alternate care." *Pirelli-*

*Armstrong Tire Co. v. Reynolds*, 562 N.W.2d 433, 437 (Iowa 1997) (internal citation omitted).

### A. Agency discretion.

Denemark first alleges the district court erred by holding the commissioner's authority to order alternate medical care is discretionary rather than mandatory. The district court based its determination on the use of "may" in the sentence stating that "the commissioner *may*, upon application and reasonable proofs of the necessity therefor, allow and order other care." Iowa Code § 85.27(4) (emphasis added). When the word "may" is used in a statute, it confers a power. *See id.* § 4.1(30)(c). Usually, the use of "may" implies an act is discretionary. *See Fortune v. State*, 957 N.W.2d 696, 703 (Iowa 2021) (stating that "the term 'may' ordinarily vests [the actor] with discretion"); *see also Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) ("This Court has 'repeatedly observed' that 'the word "may" *clearly* connotes discretion.'" (citation omitted)); *Kopecky v. Iowa Racing & Gaming Comm'n*, 891 N.W.2d 439, 443 (Iowa 2017) ("When the legislature uses the term "may" in a statute, it is usually permissive."). There are occasions when "may" is interpreted to confer a mandatory duty. *See Iowa Nat'l Indus. Loan Co. v. Iowa State Dep't of Revenue*, 224 N.W.2d 437, 440 (Iowa 1974) (noting that the court applies the construction that best carries the purpose of the statute into effect). But when both "may" and "shall" are used in the same statue, it suggests the legislature has used them in their usual and ordinary sense:

> Where both mandatory and directory verbs are used in the same statute, or in the same section, paragraph, or sentence of a statute, it is a fair inference that the legislature realized the difference in meaning and intended that the verbs should carry with them their ordinary meanings. Especially is this true where 'shall' and 'may' are

used in close juxtaposition in a statutory provision, under circumstances that would indicate that a different treatment is intended for the predicates following them.

*Id.* at 442 (citation omitted).

Section 85.27(4) uses "may" four times while "shall" appears six times, showing the legislature intended them to have different meanings. As used elsewhere in section 85.27(4), "may" is used in the discretionary sense to refer to: the possibility of an employer and an employee agreeing, an employee's ability to choose medical care at the employer's expense in certain emergencies, and the choice to have a hearing by telephone or in-person. Likewise, "shall" is used elsewhere in the section in the mandatory sense for the categorization of actions under the subsection as original proceedings, how the hearing is conducted, and the timeframe in which a decision is issued.

Denemark argues that section 85.27(4) use of "may" does not provide the agency with "absolute discretion" when deciding to grant requests for alternate medical care. He claims that its use is given context by the conditional modifier that follows the term: "upon . . . reasonable proofs of the necessity thereof." In Denemark's view, "may" is used because an employee must first meet the requisite burden of proof. But section 85.27(4) uses "shall" in a similar way when describing how a hearing is conducted: "A request for an in-person hearing *shall* be approved *unless* the in-person hearing would be impractical because of the distance between the parties to the hearing." *Id.* (emphasis added). The legislature could have required the commissioner grant a request for alternate medical care if an employee provides reasonable proof of its necessity by stating that "the commissioner *shall*, upon application and reasonable proofs of the necessity

therefor, allow and order other care." It did not. Instead, it allowed the commissioner discretion in deciding whether to grant an application for alternate medical care when an employee provides reasonable proof of its necessity. Of course, that discretion must be "reasoned rather than absolute." *Johnston v. Iowa Real Est. Comm'n*, 344 N.W.2d 236, 239 (Iowa 1984) (noting that discretionary agency action depends on the facts before it and that "the applicant, the public and the courts upon judicial review are all entitled to know" the reason for the agency's decision); *see also* Iowa Code § 17A.19(10)(n) (allowing the court on judicial review to grant relief when the agency's action is "unreasonable, arbitrary, capricious, or an abuse of discretion").

The district court applied the proper standard on judicial review of Denemark's application for alternate care.

**B. Excusable delay.**

Denemark next contends the district court applied the wrong legal standard to excuse ADM's denials of or delays in providing care. He argues the court erred by finding that "ADM examined whether Denemark's injury that needed surgery in August 2020 was the same workplace injury from December 2019, or whether there was some intervening cause, unrelated to the workplace injury, that necessitated surgery." He claims that the record does not support a finding that ADM ever investigated causation.

The district court made the statement Denemark complains of in response to an argument advanced by Denemark. In his brief for judicial review, Denemark claimed that ADM intentionally interfered with his medical care by failing to approve the surgery before its scheduled date of October 5 and no evidence showed "the

cancellation was unintentional or otherwise justifiable or excusable." The district court disagreed, noting that once an employer's right to control medical care attaches under section 85.27(4), "it remains with the employer under the statute until the employer denies the injury is work-related, withdraws authorization of the care, or until the commissioner orders alternative care." *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 207 (Iowa 2010). Before losing the right to direct medical care, an employer must deny that the employee's injury arose in the course and scope of employment. *See id.* A dispute over the extent of an injury that an employer concedes arose in the course and scope of employment "is not a ground, standing alone, for a determination that the employer has forfeited its right to select the medical care." *Id.* In other words, any delay in approving the surgery for such an investigation would justify or excuse it. The communications documented by PCI and Denemark's attorney show that the reason given for the delay was for investigation. However much investigation occurred, the overall delay was brief; ADM informed PCI of its concerns about causation on September 18 but approved the surgery on October 21.[2]

Denemark had the burden of showing the medical care ADM authorized was ineffective, inferior, or less extensive than the care he sought. *See Pirelli-Armstrong Tire Co.*, 562 N.W.2d at 437. The deputy commissioner found that

---

[2] Denemark claims a delay of 165 days from the time Dr. Kuo recommended surgery on August 18 until the surgery was performed on January 29. But this claim overlooks intervening delays that occurred during that period, which spanned two applications for alternate care, with UIHC rescheduling one appointment and Denemark rescheduling the December 29 surgery.

Denemark failed to do so on the delay in surgery scheduled for October 5. The district court agreed, and we reach the same conclusion.

### C. Improper fact-findings and legal elements.

Denemark contends the district court applied the wrong legal standard by engaging in its own fact-finding during the judicial review process. We disagree. The district court found substantial evidence supports the factual findings that led to the denial of Denemark's application for alternative care. We reach the same conclusion.

We also reject Denemark's claim that the district court required proof of an ulterior motive for ADM's delay or denial of medical care. The district court's ruling states there is "little or no evidence to suggest that ADM had ulterior motives to prevent Denemark from receiving proper care." But rather than imposing this burden on Denemark, the district court was merely responding to Denemark's argument on judicial review.

### D. Agency precedent.

Finally, Denemark contends the agency failed to explain its departure from prior precedents. *See* Iowa Code § 17A.19(10)(h) (allowing relief when an agency action "is inconsistent with the agency's prior practice or precedents").

In applying the provisions of the Iowa Administrative Act on prior agency precedent, the supreme court had distinguished a final decision in a contested workers' compensation case from an agency decision rendered after a public hearing when there is no contested case. *See Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 332 (Iowa 2005). In the latter, "[t]he controlling legal standards are those set out in the workers' compensation statutes and in this

court's opinions, not in prior agency decisions." *Id.* The agency followed the statute in denying Denemark's application for alternate care, and Denemark has failed to show the agency decision here conflicts with the precedent he cites.

**IV. Conclusion.**

The district court properly applied the law on judicial review of the agency action. Because we reach the same conclusions as the district court, we affirm.

**AFFIRMED.**